UNITED STATES of America

v.

Igor Antonio SANDOVAL, Appellant.

No. 82–2155.

United States Court of Appeals, District of Columbia Circuit.

Argued March 18, 1983.

Decided June 30, 1983.

Richard W. Goldberg (student counsel), with whom Steven H. Goldblatt (appointed by this court) and Samuel Dash, Georgetown University Law Center, Washington, D.C., were on the brief, for appellant.

Wendy Bebie, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., and Michael W. Farrell, John F. Fisher, and Theodore A. Shmanda, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before WRIGHT and MIKVA, Circuit Judges, and SWYGERT,* Senior Circuit Judge.

Opinion for the court filed by Senior Circuit Judge SWYGERT.

SWYGERT, Senior Circuit Judge:

Defendant-appellant Igor Antonio Sandoval was convicted by a jury of distributing cocaine in violation of 21 U.S.C. § 841(a) (1976) and received a three-year sentence with a two-year special parole term. On appeal the only issue is whether the trial court correctly admitted into evidence a

---

* Of the Seventh Circuit, sitting by designation pursuant to 28 U.S.C. § 291(a) (Supp. V 1981).

tape recording of a conversation among the defendant, two undercover police officers, and an informant, which culminated in the sale of several ounces of cocaine. We affirm.

At trial the officers testified that on March 20, 1982, they and the informant met Sandoval and John Carlisle in an apartment in the District of Columbia for the purpose of purchasing drugs. After searching the officers and haggling over the price of the cocaine for approximately forty-five minutes, Carlisle reached an agreement with the officers and verified the price with Sandoval, who produced three ounces of cocaine from a paper bag. Detective Schmidt, one of the undercover agents, handed $6,500 in bills whose serial numbers had been recorded to Carlisle, who counted it and handed it to Sandoval. Shortly thereafter other Metropolitan Police Department officers entered the apartment and arrested Carlisle and Sandoval.

During the negotiations for the drug purchase, Detective Schmidt wore a concealed and undetected radio transmitter in order to broadcast sounds from the apartment to a van parked at the rear of the apartment. The recording device located in the van and the transmitter had been tested by Schmidt before he entered the apartment. He testified at trial that the entire transaction, from before he entered the apartment until after the arrests were made, was recorded.

During the trial the tape recording was admitted into evidence and played for the jury. Before its admission Schmidt testified that the tape was an accurate recording of the conversation and that the red star with which the tape was marked indicated that it was the original tape. The other undercover officer, Officer Steinhart, testified that he listened to the tape the day before the trial and that it was an accurate recording of the conversation in the apartment. Following this preliminary testimony, the tape was played to the jury over the objection of the defendant. Schmidt later identified the voices on the tape and testified that the tape had not been altered, but represented what occurred in the apart-

ment. Although the chain of custody of the money and the cocaine was scrupulously proved, the government did not attempt to authenticate the tape by evidence that the transmitter and recorder were in working order and capable of accurately recording the conversation reproduced on the tape, or by evidence establishing chain of custody of the tape.

On appeal the defendant argues that the tape recording lacked sufficient authentication and therefore should have been excluded. Although the government contends that the defendant failed to object to the admission of the tape and thereby waived his right to raise this issue on appeal, the defense counsel did object to the playing of the tape on the ground that no "proper foundation has been laid for it to be played." Tr. June 24, 1982, at 70. The issue therefore is properly before the court.

 The admission of tape recordings into evidence is committed to the sound discretion of the district court, *United States v. Slade,* 627 F.2d 293, 301 (D.C.Cir.), *cert. denied,* 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980), so long as the tape is authentic and intelligible, *see United States v. Haldeman,* 559 F.2d 31, 107 (D.C.Cir. 1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). Authenticity is the only one of these criteria in question here. The defendant argues that because tape recordings are peculiarly susceptible to undetectable adulteration and sometimes even indeliberate alteration, *see, e.g., United States v. Biggins,* 551 F.2d 64, 66 (5th Cir.1977); *United States v. Gigante,* 538 F.2d 502, 505 (2d Cir.1976); *United States v. Starks,* 515 F.2d 112, 121 (3d Cir.1975), *aff'd after remand on other grounds sub nom. Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), the court should require strict proof of the circumstances under which a tape was made and its chain of custody as a minimal foundation. In fact, in cases in this circuit involving such evidence, this type of authentication seems typical, *see, e.g., United States v. Slade,* 627 F.2d at 301; *United States v. Haldeman,* 559 F.2d at 107–08,

and may well be the preferable mode. In the circumstances of this case, however, we cannot say that the district court abused its discretion to admit the evidence, because the tape recording was corroborated by the independent testimony of the two police officers, and the defendant, a participant in the taped conversation, did not challenge the accuracy of the recording. *Cf. United States v. Craig,* 573 F.2d 455, 478–79 (7th Cir.1977), *cert. denied,* 439 U.S. 820, 99 S.Ct. 82, 58 L.Ed.2d 110 (1978); *United States v. Biggins,* 551 F.2d at 66–67; *United States v. Starks,* 515 F.2d at 122. The standard for authentication is that " 'the possibilities of misidentification and adulteration [must] be eliminated, not absolutely, but as a matter of reasonable probability.' " *United States v. Haldeman,* 559 F.2d at 107 (quoting *Gass v. United States,* 416 F.2d 767, 770 (D.C.Cir.1969)). Because the officers' uncontroverted testimony both indicated that the tape was accurate and provided an independent recollection that corresponded to the taped version of the events, the "reasonable probability of accuracy" test seems to have been satisfied.

To the extent that the defendant's objections were based on the inherent limitations of the tape medium and the likelihood that the officers' recollection of the events three months after their occurrence was imprecise, they could have been pursued through motions in limine and cross-examination, procedures the defendant failed to exploit.

The judgment of conviction is therefore affirmed.