UNITED STATES, Appellee,

v.

Gregory J. BLANCHARD, Captain,
U.S. Army, Appellant.

No. 97–0381.
Crim.App. No. 9500914.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 17, 1997.

Decided Sept. 2, 1998.

For Appellant: *Captain Jodi E. Terwilliger–Stacey* (argued); *Colonel John T. Phelps II, Lieutenant Colonel Michael L. Walters, Major Michael E. Hatch,* and *Captain Norman R. Zamboni* (on brief); *Major Holly S. Coffey.*

For Appellee: *Captain Arthur J. Coulter* (argued); *Colonel Joseph E. Ross, Lieutenant Colonel Frederic L. Borch,* and *Captain John M. Bergen* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

On April 12 and May 22–24, 1995, appellant was tried by a general court-martial composed of members at Fort Gordon, Georgia. Contrary to his pleas, he was found guilty of maltreatment of a subordinate, as well as two specifications each of conduct unbecoming an officer by wrongfully engaging in sexual intercourse with a subordinate and of fraternization, in violation of Articles 93, 133, and 134, Uniform Code of Military Justice, 10 USC §§ 893, 933, and 934, respectively. His adjudged sentence of dismissal was approved by the convening authority on September 19, 1995, and the Court of Criminal Appeals affirmed in an unpublished opinion dated November 14, 1996.

On June 20, 1997, this Court granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRED BY ADMITTING, OVER DEFENSE OBJECTION, THE AUDIO TAPE[S], PROSECUTION EXHIBITS 4 AND 1.

We hold that the military judge did not abuse his discretion in admitting as evidence the audio tapes which purportedly contained incriminating telephone conversations between appellant and the alleged victim. Mil. R.Evid. 901, Manual for Courts–Martial, United States (1995 ed.); *see United States v. Fuentes,* 563 F.2d 527, 531–32 (2d Cir.1977)(flexible rule for admission of audiotape evidence).

Nearly all the Charges and underlying specifications against appellant arose out of a sexual relationship between appellant and a female soldier, Specialist (SPC) Daugherty. Before trial, defense counsel moved to suppress tape recordings of two telephone conversations between appellant and SPC Daugherty on the grounds that they were not properly authenticated. As the proponent of the evidence, the Government sought to properly authenticate the audio tapes through the testimony of several witnesses.

SPC Daugherty testified that she was given "a wire" by Sergeant First Class (SFC) Vega, her boyfriend, in order to tape record a telephone conversation between SPC Daugherty and appellant. SFC Vega hoped to record incriminating statements by appellant to prevent his retaliation against them for their romantic relationship. SPC Daugherty stated that she attempted to record a conversation when appellant later telephoned her. She further testified that she taped the initial conversation with appellant but that her phone rang again immediately after her telephone conversation with appellant concluded. Unfortunately, the tape recorder remained on. Once SPC Daugherty realized that this telephone call was from SFC Vega, she "stopped the tape player" and then "made another tape the second night [appellant] called." This second conversation was recorded on the same tape as the first one.

SPC Daugherty testified that these recordings were made on January 6 and 7, 1994. She further admitted that she deleted one part of the tape that concerned a matter which she did not want SFC Vega to hear. In addition, SPC Daugherty asserted that the tape was stolen from her house by a friend of hers (SPC Boyd) who had visited SPC Daugherty's house to make a long distance phone call. SPC Daugherty and SPC Boyd were both members of a rehabilitation program. According to SPC Daugherty, SPC Boyd stole the tape in an apparent effort to blackmail appellant. Two days after the tape disappeared, SPC Boyd returned it

to SPC Daugherty at a Burger King restaurant. When SPC Daugherty returned home, she immediately made a copy of the tape. She could not "recall" whether SPC Boyd had made any changes to the tape while it was in his possession.

SPC Daugherty stated that, over the next couple of months, she kept one tape in her attic and the other in the trunk of her car. In March of 1994, she gave one of the tapes to MAJ Sellen after he told her that she "could be held with obstruction of justice" if she refused to turn it over to him. SPC Daugherty later turned over a second tape, the original, when she took "it to the MPI Station as they had requested it."

Prior to trial, defense counsel made a motion to suppress as evidence the two tapes of the purported telephone conversations between appellant and SPC Daugherty. In these conversations, appellant made certain incriminating statements concerning an unlawful sexual relationship with her. Defense counsel objected to admission of the tapes on the ground that they were not properly authenticated in accordance with several federal court of appeals decisions, including *United States v. Tarantino,* 846 F.2d 1384, 1411 (D.C.Cir.1988); *United States v. Anderton,* 679 F.2d 1199, 1202 (5th Cir.1982); *United States v. McMillan,* 508 F.2d 101 (8th Cir. 1974). He particularly argues that these cases establish "a seven-pronged test" for authenticating an audio tape and that the record shows four of those prongs were not met in this case.

The military judge admitted the tapes and found that they were adequately authenticated. Specifically, the military judge stated:

MJ: This court finds the tape recording, which is the subject of this motion, to have been adequately authenticated to the extent that the court members can find the evidence to be what it purports to be, that is, the tape recording of two telephone conversations between Specialist Daugherty and the accused. I appreciate the Defense Counsel's bringing my attention to the law within the Fifth and Eighth Federal Circuits concerning the admissibility of tape recordings; however, this court does not totally agree with a rigid application of the seven part criteria. The Military

Rules of Evidence intend that a liberal—liberal view of evidence should be taken by the court. More evidence is to go to the factfinder so that they can give the evidence the consideration it deserves. *Specialist Daugherty did testify that she has listened to the complete tapes of Prosecution Exhibit 1 and Appellate Exhibit X and has indicated that Appellate Exhibit VII is a fair and accurate representation of the contents of the taped telephone conversation.* From this, the court concludes that Specialist Daugherty has adequately authenticated the tape recordings presented in court at least as duplicate originals of the taped conversations. The court is also of the opinion that the facts that the tape was stolen for two days and parts of the conversation were either erased or were not recorded does not affect the authenticity of the recording, but may affect how much credence the members will give to the tape. *The tape does apparently contain a substantial amount of the purported conversation and voice identification of the speakers has adequately been established by Specialist Daugherty, Mrs. Wilson, and the accused's wife.* The discrepancies within the tape and surrounding the taking and preservation of the tape are matters that may affect the weight to be given to the evidence, but they do not affect its admissibility. I would also mention that the last phrase of the U.S.Code Section cited by the defense, that is, "or for the purpose of committing any other injurious act," was deleted from the statute in 1986. The court finds the statute to be a criminal statute, not a rule of evidence. The court also finds that the tape was made to keep the accused from bothering Specialist Daugherty and Sergeant First Class Vega, and this purpose is outside the language of the statute. The court, therefore, denies the defense motion to suppress or rule inadmissible the purported telephone conversation between Specialist Daugherty and the accused.

(Emphasis added.)

▬▬▬ ▬▬ ▬▬

■ On appeal before this Court, appellant asserts that "[t]he federal circuits have

established essentially a seven-pronged test for admissibility of a taped conversation." He delineates these prongs as follows:

(1) That the recording device was capable of taping the conversation offered in evidence;

(2) That the operator of the device was competent to operate the device;

(3) That the record[ing] is authentic and correct;

(4) That changes, additions or deletions have not been made in the recording;

(5) That the recording has been preserved in a manner that is shown to the court;

(6) That the speakers on the tape are identified; and

(7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.

Final Brief at 3–4.

Appellant then cites a portion of the military judge's ruling on his pretrial motion to suppress and asserts that the military judge "ignored the seven-pronged test espoused in the federal case law." He particularly states:

As can be seen, the military judge ignored the seven-pronged test espoused in the federal case law. For example, prong three is not satisfied because the tape is not "correct," and may not be authentic. Prong four is not satisfied because changes and deletions had been made to the tape.

The military judge, however, made no attempt to evaluate the significance of the omitted or erased portions. Unbelievably, the military judge never even listened to the tape recording. Without such an analysis, his ruling on the tape's admissibility was improper.

*Id.* at 4–5.

We disagree that appellant's convictions should be overturned on these grounds.

Our starting point in reaching this conclusion is Article 36, UCMJ, 10 USC § 836. It states:

§ 83[6]. **Art. 36. President may prescribe rules**

(a) Pretrial, trial, and post-trial procedures, *including modes of proof,* for cases arising under this chapter triable in courts-martial, military commissions and other military tribunals, and procedures for courts of inquiry, may be prescribed by the President by regulations which shall, so far as he considers practicable, apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts, but which may not be contrary to or inconsistent with this chapter.

(b) All rules and regulations made under this article shall be uniform insofar as practicable.

(Emphasis added.)

The President, as constitutionally authorized by Congress, promulgated the Military Rules of Evidence, which include a rule for authentication of evidence at courts-martial. *See generally United States v. Scheffer,* ——— U.S. ———, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). Accordingly, federal case law notwithstanding, our concern is what the Military Rules of Evidence say concerning authentication of evidence at courts-martial.

Mil.R.Evid. 901 initially states in this regard:

**Rule 901. Requirement of authentication or identification**

(a) *General provision.* The requirement of authentication or identification as a condition precedent to admissibility is satisfied *by evidence sufficient to support a finding that the matter in question is what its proponent claims.*

(Emphasis added.)

▇▇ This rule is the same as Fed.R.Evid. 901. It embraces the well-established view that authentication is a component of relevancy (evidence admitted as something can have no probative value unless that is what it really is). Moreover, it requires a preliminary determination by the judge that sufficient evidence of authenticity exists to present the authenticity question to the members for their ultimate factual determination. *See generally United States v. Sliker,* 751 F.2d 477 (2d Cir.1984); *see Ricketts v. City of Hartford,* 74 F.3d 1397, 1411 (2d Cir.

1996)(judge's discretion to exclude evidence on authenticity ground is limited to deciding whether sufficient proof exists for a reasonable juror to determine authenticity). It suffices to say that these same principles are applicable at courts-martial and, accordingly, federal court of appeals decisions applying these principles would be most helpful. *See United States v. Richendollar*, 22 MJ 231 (CMA 1986).

Nevertheless, we do not accept appellant's argument that the seven-prong test of *Anderton* constitutes the law in the federal circuits. A well known federal judge and evidentiary expert postulated a markedly different view of the state of federal law. He noted that the multi-prong approach urged by appellant is followed in the Third and Eighth Circuits, but a considerably less formalistic and more flexible approach is followed in the Second, Fifth, Seventh, Ninth, Eleventh, and District of Columbia Circuits. 5 J. Weinstein and M. Berger, *Weinstein's Federal Evidence* § 901.07[3][a] (2d ed.1998). We agree. *See generally United States v. Fuentes, supra.*

We further note that Mil.R.Evid. 901(b)(5) particularly addresses authentication of voices on tape recordings. It expressly contemplates the more flexible approach to authentication of this type of evidence. It states:

> (b) *Illustrations.* By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
>
> * * *
>
> (5) *Voice identification.* Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, *by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.*

(Emphasis added.)

In sum, our military rules of evidence permit, but do not require, consideration of the seven prongs for authentication cited by appellant as factors in a judge's or the members' authenticity determinations. Accordingly, we reject appellant's general argument that the military judge erred by failing to strictly follow selected federal decisions in making his authenticity determination. *United States v. Fuentes, supra.*

■ Applying our own standard for authentication, we further conclude that there was sufficient evidence for the judge to present the authentication question to the members. At issue was whether the tapes in question contained a telephone conversation between appellant and SPC Daugherty as claimed by the prosecution. In this regard, we note that SPC Daugherty testified as to the dates and content of the telephone conversations, the manner of the recordings, and her recognition of her own and appellant's voice on the tapes. *See United States v. Lance*, 853 F.2d 1177, 1181–82 (5th Cir.1988). In addition, Ms. Wilson, a civilian voice-print examiner concluded that the tapes contained conversations between appellant and SPC Daugherty. In particular, Ms. Wilson testified that she found 20 matches of SPC Daugherty's voice on the tape and over 90 matches of appellant's voice. *See United States v. Polk*, 56 F.3d 613, 631–32 (5th Cir. 1995); *United States v. Sandoval*, 709 F.2d 1553, 1554–55 (D.C.Cir.1983); Mil.R.Evid. 901(b)(5). Finally, appellant's wife and members of his command who were familiar with his voice all identified appellant's voice on at least parts of the tapes preferred by the Government. On this evidentiary basis, we hold that the tapes were properly presented to the members for their authenticity determination as required by Mil.R.Evid. 901(b)(5). *See United States v. Wilson*, 115 F.3d 1185, 1188–89 (4th Cir.1997).

■ Appellant's remaining arguments against admitting the audio tapes are also without merit. Mil.R.Evid. 104 gives discretion to the trial judge as to the manner in which he makes preliminary determinations concerning admissibility of evidence. *See Sliker, supra* at 499–500. We can find no other rule of evidence or procedure that requires the judge to hear the tape before making a preliminary authenticity determination under Mil.R.Evid. 901(a). Moreover,

hearing the tapes and attempting to determine their authenticity is not the preferred way for a judge to fulfill his or her particular authenticity function. *See Ricketts v. City of Hartford, supra.* Finally, the existence of deletions or suspected deletions from the tapes and gaps in the chain of custody do not *per se* bar admission of the audio tapes. *United States v. Sandoval, supra* (standard is that possibilities of misidentification and adulteration be eliminated, not absolutely, but as a matter of reasonable probability); *see also United States v. Maxwell,* 38 MJ 148, 152 (CMA 1993)(gaps in chain of custody go to weight afforded evidence, not its admissibility). Accordingly, we conclude that the military judge did not err in admitting evidence of the audio tapes for the members' consideration in this case.

The decision of the United States Army Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges CRAWFORD, GIERKE, and EFFRON concur.