**UNITED STATES of America**

**v.**

**Bobby A. HOLTON.**

**No. Crim. 91-677 SSH.**

United States District Court, District of Columbia.

Oct. 27, 2000.

AUSA Robert D. Okun, U.S. Attorney's Office, Special Proceedings Division, Washington, DC, for plaintiffs.

Bobby A. Holton, for defendants pro se.

## *MEMORANDUM ORDER*

STANLEY S. HARRIS, District Judge.

Before the Court are petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, and supplemental submissions thereto.[1] Because the motion and the files and records of the case conclusively show that petitioner is entitled to no relief, the Court denies the motion, as well as his request for an evidentiary hearing and appointment of counsel.[2]

1. On November 9, 1998, the Court allowed petitioner to join co-defendant Dennis S. Davis's § 2255 motion and to supplement it with additional claims. The Court, however, has determined that almost none of Davis's claims apply readily to petitioner, particularly because they are too specific to the performance of Davis's own counsel. Furthermore, petitioner's supplemental claims are numerous and significantly different from Davis's claims. The Court therefore addressed Davis's § 2255 motion in a separate Order, and will address in this Order the limited claims that petitioner conceivably could share with Davis's § 2255 claims, as well as petitioner's supplemental claims filed on and after January 28, 1999. Because the Court allowed petitioner to join Davis's § 2255 motion, the Court will continue to treat petitioner's § 2255 motion as originally filed on the same date that Davis's § 2255 motion was filed, such that no statute of limitations problems are presented.

The Court also exercises its discretion to allow other claims which petitioner filed after the February 1, 1999, deadline to submit supplemental claims, despite their lateness, because the Court finds those additional grounds to be meritless, and because the Court has not requested the government to file an opposition.

2. Furthermore, petitioner has previously requested appointment of counsel, which the Court denied on April 28, 1998. Petitioner

## I. Legal Standard

To obtain relief based on a trial error that is raised for the first time on collateral attack, the defendant must show "cause" for his failure to raise the issue at trial and on direct appeal, and he must show "actual prejudice" resulting from the errors of which he complains. *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 1594–95, 71 L.Ed.2d 816 (1982). A collateral attack under § 2255 is not a second chance at appeal, nor is it a substitute for direct appeal; a defendant is required to show "a good deal more than would be sufficient on direct appeal" to gain collateral relief. *United States v. Pollard,* 959 F.2d 1011, 1020 (D.C.Cir.), *cert. denied,* 506 U.S. 915, 113 S.Ct. 322, 121 L.Ed.2d 242 (1992). However, a petitioner need not show "cause and prejudice" for not having raised claims of ineffective assistance of counsel on direct appeal, as these claims may properly be raised for the first time in a § 2255 motion. *United States v. Johnson,* 1999 WL 414237 at *1 (D.C.Cir., May 28, 1999) (unpublished opinion).

Petitioner claims that he is entitled to relief because he had ineffective assistance of counsel, primarily by his counsel Frances D'Antuono during his second trial, and his appellate counsel Robert S. Becker.[3] To prevail on an ineffective assistance of counsel claim, a defendant must show two things. First, the defendant must show that counsel's performance was deficient, falling below an objective standard of reasonableness. *See Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. 2052. In evaluating counsel's performance, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. 2052. Second, the defendant must show that the deficient performance had a prejudicial effect. To prove prejudice, a defendant must show that "counsel's errors were so serious to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

Petitioner's allegations do not demonstrate that his counsels' performance fell below an objective standard of reasonableness. The Court's independent recollection of the trial also leads it to conclude that defendant's representation was of a high professional quality. Even if any of the allegations did amount to deficient performance, the Court finds that they would not have altered the outcome of the case given the weight of the evidence presented to the jury. *See Strickland,* 466 U.S. at 695, 104 S.Ct. 2052 ("A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.") This evidence included corroborating evidence that petitioner was the party who engaged in the drug transactions, tape recordings of the drug transactions, evidence that petitioner was arrested beside a car that contained a cellular telephone which was used in the drug transactions, and $559 recovered from petitioner. Nevertheless, the Court briefly addresses each of petitioner's allegations of ineffective assistance of counsel.

## II. Failure to interview and call Dirk Wright as a witness

Dirk Wright was a police informant, whom petitioner alleges had improp-

has given the Court no reason to alter its earlier determination.

3. To the extent that petitioner casts his claims as direct errors by the government that tainted his trial and thus warrant a reversal of his conviction, the Court finds that petitioner is procedurally barred from bringing them because he has not satisfied the "cause and prejudice" test.

er motives to fabricate evidence against him: specifically, Wright was paid for his undercover acts, had a pending case awaiting sentencing, and had testified falsely about his criminal record. Petitioner therefore claims that Wright was the only person who could have substantiated his theory that the government fabricated the case against him. Although Wright testified during the first trial, petitioner claims that in the second trial, Ms. D'Antuono failed to interview or call Wright as a witness.

The Court finds that Ms. D'Antuono's decision not to interview Wright does not amount to ineffective assistance of counsel. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052. However, "[a] claim of failure to interview a witness ... cannot establish ineffective assistance when the person's account is otherwise fairly known to defense counsel." *United States v. Decoster,* 624 F.2d 196, 209 (D.C.Cir.1976) (en banc). In *Huffington v. Nuth,* 140 F.3d 572, 580 (4th Cir.1998), the Court found that counsel was not ineffective where trial counsel had transcripts of the witness's testimony in petitioner's first trial and a co-defendant's trial. Wright's testimony from the first trial was transcribed and available to the counsel; Wright's testimony included questioning as to his criminal record, his motives, and payment from the police. *See* Tr., Apr. 27, 1992 at 12–237.

Ms. D'Antuono's decision not to call Wright as a witness also does not amount to ineffective assistance. A sound tactical decision by defense counsel with which the defendant later purports to disagree cannot be the basis of an ineffective assistance of counsel claim. *See United States v. Liquori,* 1999 WL 613440 (9th Cir., Aug.12, 1999); *United States v. Smith,* 198 F.3d 377, 1999 WL 1201442 at *7 (2d Cir., Dec.2, 1999). Bernard Grimm, petitioner's counsel at the first trial, elicited from Wright that the police paid him and that he had an arrest record and history of drug dealing. *See* Tr. Apr. 27, 1992, at 129–37, 147–50. Mr. Grimm, as well as a co-defendant's attorney, also suggested that Wright was telling the Government what they wanted to hear because of his own pending sentencing in a drug case. *Id.* at 129–37, 207–214. Despite these efforts to establish an improper motive behind Wright's testimony, the jury found the defendants guilty. Petitioner's counsel's decision not to call Wright to testify appears within the range of professionally reasonable judgment.

Even if both decisions not to interview or call Wright as a witness fell below an objective standard of reasonableness, petitioner has failed to establish a reasonable probability that he would have been acquitted had Wright testified. *See United States v. Debango,* 780 F.2d 81, 85 (D.C.Cir.1986). "[N]ot every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052. Considering that Wright did testify in the first trial, yet the jury returned guilty verdicts, the Court is unpersuaded that this alleged error could have influenced the guilty verdicts in the second trial.

**III. Testimony of Gary Curtis**

In the first trial, Officer Gary Curtis, the backup undercover officer for Detective Michael Quander during the drug transactions, corroborated Detective Quander's recollection of the events. On cross-examination, however, defense counsel impeached Officer Curtis's testimony based on his obstructed view of the events. *See* Tr., Apr. 27, 1992, at 245–50. In the second trial, before Officer Curtis was called to testify, the Court agreed to a request by a co-defendant's attorney that the government caution Officer Curtis not to testify to those facts which he had previ-

ously admitted he could not directly see. *See* Tr., Dec. 7, 1995, at 3.

Petitioner contends that despite this ruling, Officer Curtis did testify to these facts, and the Court allowed his testimony without objection or over partial objection. Petitioner claims that without this false testimony bolstering the "weak" testimony by Detective Quander, he would not have been convicted. Petitioner therefore contends that his trial attorneys in the first and second trials as well as his appellate counsel were ineffective for failing to move for dismissal of the indictments against him based on prosecutorial misconduct for presenting false testimony.

The Court finds no merit in petitioner's arguments. A review of Officer Curtis's testimony in the second trial reveals only that Ms. D'Antuono, as well as the other two defense attorneys, did a zealous job of cross-examining him and attempting to impeach his testimony. *See* Tr., Dec. 7, 1995, at 13–107. Officer Curtis's testimony does not appear to be provide a foundation for dismissal of the indictment. The Court therefore cannot conclude that the conduct of petitioner's attorneys fell below an objective standard of reasonableness.

### IV. Failure to establish integrity of tape recordings

The government's evidence included body-wire tape recordings. During the first trial, the tapes were admitted into evidence, but the parties agreed not to play the tapes to the jury. *U.S. v. Holton,* 116 F.3d 1536, 1539 (D.C.Cir.1997). At the second trial, the Court allowed the tapes to be played when presented with prepared transcriptions of the tapes. Defense counsel objected to the tapes being played because of their poor quality, and they objected to the accuracy of the transcriptions because parts of the tapes were inaudible.

Petitioner argues that although he told Ms. D'Antuono that the tape was inaccurate, and that his was not one of the voices on the tape, she failed to move to suppress the tapes and investigate the chain of custody; she also failed to request that an independent expert witness investigate the authenticity of the tapes and examine the tapes for editing or erasures. He further claims that while Mr. Becker objected on appeal to the accuracy of the tapes, he failed to object to their authenticity.

The admission of tape recordings is committed to the "sound discretion" of the court, "so long as the tape is authentic and intelligible." *United States v. Sandoval,* 709 F.2d 1553, 1554 (D.C.Cir.1983) (internal citations omitted). The standard for authentication is that, "absent a showing of bad faith or evidence tampering, the Government need only demonstrate that as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated." *United States v. White,* 116 F.3d 903, 920–21 (D.C.Cir. 1997) (internal quotations omitted). "Tapes may be authenticated by testimony describing the process or system that created the tape, or by testimony from parties to the conversation affirming that the tape[s] contained an accurate record of what was said." *United States v. Strothers,* 77 F.3d 1389, 1392 (D.C.Cir.1996). *See also* Fed.R.Evid. 901(b)(5).

The tapes were authenticated through Detective Quander's testimony. *Holton,* 116 F.3d at 1543. The Court stated that the tapes were audible and intelligible. *Id.* The Court finds that petitioner's attorneys did not render ineffective assistance. The possibility of adulteration need not be eliminated absolutely. *See Sandoval,* 709 F.2d at 1555. The government showed a reasonable probability that the tapes were authentic, and the Court, within its sound discretion, admitted them.

### V. Constitutionality of crack cocaine statute

Petitioner argues that the crack cocaine provision of 21 U.S.C. § 841 violates constitutional due process protections because it does not require that the defendant know what form of cocaine base he

possesses. He contends that scienter is particularly important where a defendant cannot know what form of cocaine base he possesses because the difference between base and powder cocaine can be discerned only by a chemist with an infrared spectrometer.

The Court rejects his argument. Several circuits have held that a defendant who is dealing drugs need not know what the specific nature of the drug is for purposes of a conviction and sentencing. *See United States v. Valencia-Gonzales,* 172 F.3d 344, 345–46 (5th Cir.1999); *United States v. Salazar,* 5 F.3d 445, 446 (9th Cir.1993); *United States v. Gomez,* 905 F.2d 1513, 1514–15 (11th Cir.1990); *United States v. Collado-Gomez,* 834 F.2d 280, 281 (2d Cir. 1987).

### VI. Failure to challenge leadership role

At the sentencing, the Court enhanced petitioner's sentence pursuant to U.S.S.G. § 3B1.1 for assuming a leadership role in the offense. Petitioner claims that he did not assume such a role, but Ms. D'Antuono failed to object, which also prevented it from being raised on appeal. Petitioner, however, cites nothing to indicate that he did not assume a leadership role. The Court also cannot find any reason to suggest otherwise. Thus, the Court cannot see how Ms. D'Antuono was constitutionally deficient in failing to object to the leadership role enhancement.

### VII. Government's use of Detective Brown

Detective Brown testified for the government in petitioner's trial. In February 2000, Detective Brown pleaded guilty to perjuring his academic credentials. *See United States v. Brown,* Criminal No. 00–35 HHK (D.D.C.). Petitioner alleges that his conviction should be overturned because the jury relied on Detective Brown's testimony to support the testimony of Quander and Curtis.[4] The Court cannot find that the jury would have reached a different conclusion even if Detective Brown had not falsely testified to his academic accreditation. The fact that Detective Brown falsified his schooling does not detract from the knowledge he gained during his extensive law enforcement and street experience, which appears to be the basis for his testimony which focused largely on chain of custody of evidence, street dealing practices, and other law enforcement-related subjects. *See United States v. Spinner,* 2000 WL 1089609 (D.D.C. July 14, 2000); *United States v. Williams,* 1999 WL 1210874 at *10–11 (D.D.C., Nov.24, 1999).[5] Considering the weight of evidence against petitioner, the Court declines to set aside petitioner's conviction.

### VIII. Requiring proof of crack cocaine and objecting to identification of crack cocaine

Petitioner claims that the government failed to prove, by a preponderance of the evidence, that the cocaine base in question was in fact "crack," and that his counsel was ineffective in not requiring the government to meet its burden. Petitioner, by way of his co-defendant Davis's § 2255 motion, relies on several Reports of Drug Property Collected, Purchased Or Seized ("DEA–7 Form"), which he claims indicate only that the substance was "cocaine base" but not necessarily the specific form of cocaine base that is "crack." However, these DEA–7 Forms undercut the argument, as the forms describe the drugs

4. Petitioner submits a transcript of Detective Brown testifying to his credentials. The transcript is irrelevant, as it is not from his trial, but apparently from *United States v. Toms,* Criminal No. 93–367 RCL (D.D.C.).

5. In fact, when he was being qualified as an expert witness, Detective Brown spent nearly all of his time discussing his extensive on-the-job experience on the police force. *See* Tr., Oct. 30, 1995, at 23–30. Only one brief question and one brief answer addressed his formal education, without mention of the type of degree or educational institution. *See id.* at 30, lines 2–3.

at issue as "rock-like substances" which were analyzed to contain cocaine base, descriptions that fit "crack." *See United States v. Prailow,* 1998 WL 939502 at *1 (D.C.Cir.1998) (unpublished decision); *United States v. Washington,* 115 F.3d 1008, 1011 (D.C.Cir.1997) ("the government tells us without contradiction from defendant that it knows 'of no rock-like form of cocaine base that is not crack' "). The Court therefore finds petitioner's argument meritless.

Upon consideration of petitioner's motion and the entire record, it hereby is

ORDERED, that petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 is denied. It hereby further is

ORDERED, that petitioner's requests for an evidentiary hearing and appointment of counsel are denied.

SO ORDERED.