# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

## No. ACM 39202

————————————

## UNITED STATES
*Appellee*

**v.**

## Luan F. JUNGKLAUS DADONA
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 2 July 2018

————————————

*Military Judge:* Charles E. Wiedie, Jr.

*Approved sentence:* Dishonorable discharge, confinement for 1 year, and reduction to E-1. Sentence adjudged 25 August 2016 by GCM convened at Kadena Air Base, Japan.

*For Appellant:* Major Jarett F. Merk, USAF; Brian A. Pristera, Esquire.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major J. Ronald Steelman III, USAF; Major Meredith L. Steer, USAF; Mary Ellen Payne, Esquire.

Before HARDING, SPERANZA, and HUYGEN, *Appellate Military Judges.*

Judge HUYGEN delivered the opinion of the court, in which Senior Judge HARDING and Judge SPERANZA joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

HUYGEN, Judge:

A general court-martial composed of officer members convicted Appellant, contrary to his pleas, of one specification of attempted sexual assault of a child whom he believed to have attained the age of 12 years but not 16 years, to wit: penetration of the child's vulva and mouth with his penis, and two specifications of attempted sexual abuse on divers occasions of a child whom he believed not to have attained the age of 16 years by committing lewd acts, to wit: communicating sexually explicit language and knowingly broadcasting his genitalia to the child, in violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880.[1] The court-martial sentenced Appellant to a dishonorable discharge, confinement for one year, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged.

Appellant raises the following three issues on appeal: (1) whether the military judge erred by denying the Defense motion to compel the assistance of an expert forensic psychologist; (2) whether digital evidence admitted by the military judge satisfies the authentication requirement of Military Rule of Evidence (Mil. R. Evid.) 901; and (3) whether the evidence of the three convicted offenses is legally sufficient to overcome the defense of entrapment.[2] We find no prejudicial error and affirm the findings and sentence.

## I. BACKGROUND

Master at Arms Petty Officer Second Class (MA2) BG was temporarily assigned to Naval Criminal Investigative Service (NCIS) Okinawa, Japan, working "shallow undercover" in an Internet Crimes Against Children-type operation. MA2 BG posed online as "Lizzdezz," which profile was assumed by Master at Arms Petty Officer Third Class (MA3) ER in late December 2015 or early January 2016. In October 2015, MA2 BG posted on Whisper, a cellphone application or app, the following: "Yo bored outta my miiiiind. Kik?? Lizzdezz". The post was broadcast to Whisper users in a 25- or 50-mile radius. Appellant, who was stationed on Okinawa at Kadena Air Base, responded under the screen name of "JJ" to "Lizzdezz" via Kik, another cellphone app. In their initial exchange, Appellant asked "Lizzdezz" her age; she answered

---

[1] The military judge granted a Defense motion pursuant to Rule for Courts-Martial (R.C.M.) 917 and found Appellant not guilty of the Charge's fourth specification of attempted possession of child pornography.

[2] Appellant raises the second and third issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

14 years old; Appellant responded, "And dang .. You are really young .."[3] Over the next three months, Appellant and "Lizzdezz" messaged each other on Kik and, on several occasions, exchanged photos, including two photos he sent showing his genitalia. Appellant included in his messages graphic descriptions of how he wanted to and would engage in oral and vaginal sexual intercourse with "Lizzdezz."

On 19 January 2016, Appellant and "Lizzdezz," then portrayed by MA3 ER, decided to meet in person. Appellant drove toward the house on Kadena Air Base where "Lizzdezz" supposedly lived with her mother. After driving by the house, parking near it, and walking past and around the house, all while continuing to exchange messages with "Lizzdezz," Appellant finally approached the house as MA3 ER watched from inside. NCIS agents apprehended Appellant when he was within 15 feet of the front door. Pursuant to a search authorization, the Air Force Office of Special Investigations found on Appellant's cellphone the same Kik messages between "JJ" and "Lizzdezz" dated 19 January 2016 that MA3 ER preserved from the cellphone used by "Lizzdezz."

## II. DISCUSSION

### A. Expert Assistance

Appellant contends that the military judge erred by denying the Defense motion to compel the expert assistance of a forensic psychologist. The military judge determined that the Defense failed to show why a forensic psychologist was necessary and why the defense counsel were unable to gather and present the evidence that the expert would develop. While the military judge addressed the many reasons cited by the trial defense team to justify the expert, Appellant now asserts that the military judge failed to address Appellant's need for a forensic psychologist particularly to understand how "avoidant personality disorder" could either provide an alternative, non-criminal explanation for the specific intent to commit the charged offenses or support an entrapment defense.

> "[S]ervicemembers are entitled to . . . expert assistance when necessary for an adequate defense." The mere possibility of assistance is not sufficient to prevail on the request. Instead, the accused has the burden of establishing that a reasonable prob-

---

[3] This opinion quotes Kik messages as they appear in prosecution exhibits except for "emojis" or "emoticons" and without correction.

ability exists that (1) an expert would be of assistance to the defense and (2) that denial of expert assistance would result in a fundamentally unfair trial. To establish the first prong, the accused "must show (1) why the expert assistance is needed; (2) what the expert assistance would accomplish for the accused; and (3) why the defense counsel were unable to gather and present the evidence that the expert assistance would be able to develop." We review the military judge's decision for an abuse of discretion.

*United States v. Freeman*, 65 M.J. 451, 458 (C.A.A.F. 2008) (alteration in original) (citations omitted).

Unlike the trial defense team, which used a broad brush to paint the picture for expert assistance in its written motion, Appellant now draws a very specific necessity for the forensic psychologist that rests on avoidant personality disorder. However, there is no evidence in the record that Appellant was ever diagnosed with the disorder, and the Defense never raised an issue of Appellant's mental health or competency. *See United States v. Anderson*, 68 M.J. 378, 383 (C.A.A.F. 2010). Even if we assume arguendo that the requested forensic psychologist was an expert in the disorder, we find nothing that indicates why the expert assistance was needed in Appellant's case.

In addition, the denial of the forensic psychologist did not result in a fundamentally unfair trial. On the contrary, the Defense was able to develop and present evidence to refute the Government's contention that Appellant had the specific intent required to commit the three offenses of which Appellant was charged and eventually convicted. Furthermore, the Defense raised (and argued) entrapment, which required (1) the Government to prove that Appellant was predisposed to commit the offenses and that he had not been induced to do so and (2) the military judge to instruct the members on the defense of entrapment. We conclude in Appellant's case that the military judge did not abuse his discretion in denying the Defense request for expert assistance because Appellant failed to establish the necessity for that assistance. *See Freeman*, 65 M.J. at 459.

## B. Authentication of Digital Evidence

Appellant next claims that the digital evidence admitted by the military judge, specifically Prosecution Exhibits 1 and 3, which consisted of screenshots of the Kik messages exchanged between Appellant and "Lizzdezz" from October 2015 through January 2016, did not satisfy the authentication requirement of Mil. R. Evid. 901. In particular, Appellant points to the "undocumented, inconsistent" process MA2 BG and MA3 ER used to capture screenshots of the messages that were otherwise deleted automatically from the Kik

accounts involved, which process resulted in at least four instances of missing messages according to Appellant.

Prosecution Exhibits 1 and 3 contained a total of 591 pages of screenshot captures of the Kik messages between "Lizzdezz" and Appellant. The Defense objected to the admission of both for lack of foundation. After hearing the testimony of MA3 ER and reviewing the deposition of MA2 BG, the military judge overruled the objections. At no time did the Defense claim at trial that the exhibits failed to satisfy the authentication requirement of Mil. R. Evid. 901.

In order to preserve a claim of error resulting from a military judge's decision to admit evidence, Mil. R. Evid. 103(a)(1) generally requires a party to make a timely objection and state the specific ground for the objection unless it is apparent from the context. If the party fails to preserve such a claim, it is forfeited and the ruling is reviewed for plain error. *United States v. Reynoso*, 66 M.J. 208, 210 (C.A.A.F. 2008). By contrast, the ruling is reviewed for abuse of discretion if the party preserves the claim. *United States v. Lubich*, 72 M.J. 170, 173 (C.A.A.F. 2013) (citing *Freeman*, 65 M.J. at 453). Because the Defense objected to the admission of Prosecution Exhibits 1 and 3 for lack of foundation, not authentication, and because authentication was not an apparent basis for the objection, we consider Appellant's instant claim forfeited. Accordingly, we reviewed the military judge's ruling to admit Prosecution Exhibits 1 and 3 for plain error.

The requirement of authentication is satisfied by "evidence sufficient to support a finding that the item is what the proponent claims it is." Mil. R. Evid. 901(a). As Appellant acknowledges, the proponent "needs only to make a prima facie showing" for the item to be admitted as authenticated, and any "flaws in the authentication . . . go to the weight of the evidence instead of its admissibility." *Lubich*, 72 M.J. at 174 (citation omitted). Appellant goes on to cite *Lubich* insofar as it speaks to the authentication of Internet and computer data downloaded on compact discs where forensic examination of the data on the discs led to the computerized reports at issue in the case. Appellant would have us liken the Kik messages and the screenshots of them to the downloaded Internet and computer data in *Lubich*; we decline to do so.

The screenshots of the Kik messages were essentially photographs. Their authentication required only testimony of a witness with knowledge of them, or MA2 BG and MA3 ER as not only the "photographers" who created the screenshots but also one of the two parties sending and receiving the messages photographed. That testimony satisfied Mil. R. Evid. 901. Although we were unable to discern that any message was missing, as Appellant claims, such an omission would not be a flaw of authentication and, even if it was, would go to the weight of the evidence, not its admissibility.

5

We conclude there was no error, much less plain error, in the military judge's ruling to admit Prosecution Exhibits 1 and 3. We also considered the exhibits' admissibility in light of relevance under Mil. R. Evid. 401 and prejudice under Mil. R. Evid. 403 and find no abuse of discretion in the military judge's decision to admit both exhibits, particularly in light of their significant probative value.

## C. Legal Sufficiency and Entrapment

Appellant asserts that the evidence for the three offenses of which Appellant was convicted was legally insufficient to overcome the defense of entrapment raised by Appellant at trial. Appellant points both to inducement by the Government, which took the form of harassment and threats by "Lizzdezz," pictures of her, and her requests for pictures of him, and to Appellant's lack of predisposition, evidenced by the absence of child pornography in his possession, his not bringing condoms to meet "Lizzdezz," and his repeated suggestions to meet outside of her house.

### 1. Law

We review issues of legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our assessment of legal sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted). The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Beyond a reasonable doubt" does not mean that the evidence must be free from conflict. *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The affirmative defense of entrapment requires evidence both that the criminal design or suggestion to commit the offense originated with the Government, not the accused, and that the accused was not predisposed to commit the offense. *See* Rule for Courts-Martial (R.C.M.) 916(g); *United States v. Hall*, 56 M.J. 432, 436–37 (C.A.A.F. 2002). "The defense has the initial burden . . . to show that a government agent originated the suggestion to commit the crime. . . . the burden then shifts to the Government to prove beyond a reasonable doubt that the criminal design did not originate with the Govern-

ment or that the accused had a predisposition to commit the offense . . . ." *United States v. Whittle*, 34 M.J. 206, 208 (C.M.A. 1992) (citation omitted).

In order for Appellant to be found guilty of an attempt offense, under Article 80, UCMJ, the Government was required to prove beyond a reasonable doubt that the Appellant did a certain overt act, that the act was done with the specific intent to commit a certain offense, that the act amounted to more than mere preparation, and that the act apparently tended to effect the commission of the intended offense.

Proof that the attempted offenses actually occurred or were completed by Appellant was not required. However, at the time of the acts, Appellant must have intended every element of the attempted offenses. Therefore, in order for the Appellant to be found guilty of the attempted offense of sexual assault of a child, the Government was required to prove beyond a reasonable doubt that Appellant committed a sexual act upon "Lizzdezz" by causing contact between his penis and her vulva or mouth, and that at the time of the sexual act "Lizzdezz" had attained the age of 12 years but had not attained the age of 16 years.

Further, in order for Appellant to be found guilty of the attempted offense of sexual abuse of a child on divers occasions by committing lewd acts upon a child who had not attained the age of 16 years, the Government was required to prove beyond a reasonable doubt that Appellant committed a lewd act upon "Lizzdezz" by communicating sexually explicit language and knowingly broadcasting Appellant's genitalia to "Lizzdezz" and that at the time "Lizzdezz" had not attained the age of 16 years.

### 2. Additional Background

In the initial October 2015 Kik exchange between Appellant and "Lizzdezz," he asked her age and she answered, "Im 14." He acknowledged her age ("And dang .. You are really young"), admitted he was older ("I'm older than 18 .. Younger than 25"), and decided to continue messaging her. Appellant warned her about the "thirsty and horny" military guys who would see her Whisper post, ask her for nude pictures, and send her "d**k pics," which description would apply verbatim to himself in the months to come. In response to the first of many requests by Appellant for proof that "Lizzdezz" was who she claimed to be, she sent the first picture, which showed her entire face. After he again told her to "be careful with the guys from whisper," she responded, "Ohkay thnx dad."

After almost a week of near-daily messages from Appellant, he sent "Lizzdezz" two pictures of his naked torso. From 21 November 2015 until 20 December 2015, he sent multiple messages with no response from her.

In a lengthy post-Christmas exchange of late December 2015, Appellant made a deliberately vague reference to sexual activity, to which "Lizzdezz" offered, "Im pretty mature for 14 you know." He then brought up oral sex and asked if she had "done that" to a guy; she indicated she had. She asked what he liked to "do" to girls and mentioned that she had not had oral sex performed on her. Appellant asked if she had ever had sex, and she responded that she had had sex once. He described in graphic detail his technique of performing oral sex and later sent another picture of his naked torso.

Several days later, Appellant sent a message to "Lizzdezz" that he was on base. She mentioned she was home alone and raised the possibility of meeting in person. He asked for a picture, and she sent one showing her lips and cleavage. She again raised the possibility of meeting and asked him to "get something" because she did not "want to get preggo." He asked if she "wanted to have sex" but did not specify what he wanted to do. After she sent another picture showing her lips and asked, "So you serious bout coming here," he eventually wrote, "I actually would like to meet up with you Tonight What do you think ?" She declined. The next day, he sent a series of messages describing in graphic detail what sexual activity they would engage in if he came to her house.

On 30 December 2015, Appellant sent "Lizzdezz" a picture of his naked torso that included his clothed genital area. As he described it, "You can even see my junk in that pic Hah like the bulge." When they again discussed the possibility of him visiting her and having sex, he wrote, "I messaged and was willing to come over You wasted that chance not me." She replied, "U sound like such a girl." When she asked about him coming to her house, he responded, "I'm not that dumb to go to your place during the day." He later accused her of "sounding too immature," which was ironic considering that he, a 24-year-old man, thought he was communicating with a 14-year-old girl.

Appellant's next graphic description of sexual activity occurred on 31 December 2015, the next discussion of a possible meeting in early January 2016. Otherwise, their exchanges were mostly banal communications with an occasional request from Appellant for a picture of "Lizzdezz."

On 19 January 2016, Appellant sent a series of messages describing what it would be like if he and "Lizzdezz" engaged in oral and vaginal sex and eventually sent two pictures, one of the tip of his naked penis and one of his

naked scrotum and legs.[4] As the two argued about her refusal to send a "sexy" picture in return, she wrote, "It doesn't seem like yu want to meet up with me anyway." When he refused to say what he wanted to do, she compared him to her "non existent dad" and said she did not "need a leture." When she asked about him coming to her house, he indicated he was too scared to do so but returned to the topic of a "sexy" picture from her. She eventually sent him another picture of her face.

When Appellant asked "Lizzdezz" what he would have to do for her to send a "sexy pic," he added, "But I wanna come over today," "You know you want me to come over and eat you out," and "You know you want to feel my bear c**k at least once inside you" and described how they would have vaginal sex when he came to her house. When she mentioned it hurt when she had sex for the first time, he confirmed he should "come by today" and asked, "Don't you wanna put those juicy lips on me" and "Don't you wanna suck my d**k." When she said she could not meet that day, he asked her for more proof that she was not law enforcement, which led to her reminding him "im 14.5" and not the 16 years of age he asked her to pretend to be. He was not going to be available the next day, so they decided to meet that night. Appellant asked if they could meet somewhere other than her house because he was scared of being seen going inside, to which "Lizzdezz" responded, "Yur seriously being a girl" and "Let me know when yu wanna be a grown up." He continued to insist on a picture as a condition of his visit. When she eventually provided a picture showing her lips and cleavage, he agreed to come that night but asked if they could first meet briefly and wrote, "You come say hi we talk for a little and then I come back at 7 That way you are more comfortable so will I be too." She insisted that he just come to her house and stay; he eventually agreed.

Appellant continued to message "Lizzdezz" via Kik during the drive to her house. After he was stopped at the base gate for "a sobriety check" by law enforcement, he parked his car and asked her to help him calm down. He then started to worry about the "guy just sitting" in the car parked next to his; he was right to worry as the "guy" was in fact an NCIS agent waiting to apprehend him. When Appellant asked "Lizzdezz" to meet him outside her house, she sent another picture of her lips. He parked his car in another location and approached her house. She told him to use the front door. As he was walking toward it, he was apprehended by NCIS agents.

---

[4] These two pictures of 19 January 2016 were the only pictures offered by the Government to prove the offense of attempted sexual abuse of a child on divers occasions by committing lewd acts, to wit: knowingly broadcasting his genitalia to "Lizzdezz."

### 3. Analysis

With the October 2015 Whisper post and the Kik messages that ensued, the Government created the *opportunity* for Appellant to commit the convicted offenses. With the on-base house "Lizzdezz" supposedly lived in with her mother, the Government provided the *facility* for Appellant to commit attempted sexual assault of a child. But Appellant chose in October 2015 to respond to the Whisper post, which was not specifically targeted at him, to engage in three months of Kik messages with "Lizzdezz," and in January 2016 to meet her in the house. *See Sorrells v. United States*, 287 U.S. 435, 441 (1932) (Inducement requires more than the Government merely affording "opportunities or facilities for the commission of the offense.").

Appellant now claims inducement because the Government supposedly harassed him by calling him "dad" and "lame;" "introduced nudity to the conversation by talking about showering;" sent him pictures of "Lizzdezz" and asked for pictures in return; and engaged in coercive tactics by threatening "to stop talking" to him. According to Appellant, the Government also induced him to commit the offenses by promising a reward of sexual intercourse with "Lizzdezz" and using "multiple rhetorical techniques." We disagree. Although inducement "may take different forms, including pressure . . . persuasion . . . threats, coercive tactics, harassment, [and] promises of reward . . . ," Appellant was induced only if the Government created "a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense." *United States v. Howell*, 36 M.J. 354, 359–60 (C.M.A. 1993) (emphasis, citations, and internal quotation marks omitted). The Government's actions in Appellant's case did not create such a risk and did not constitute inducement. Appellant was very much not the "unwary innocent" to be protected from Government inducement. *Id.* at 358 (citations omitted). Instead, he was a very wary criminal who tried on multiple occasions to confirm that "Lizzdezz" was an actual girl communicating with him in real time. Despite his suspicions and her reminders that she was 14 years old, he repeatedly and relentlessly initiated contact with her; ignored the multiple opportunities to disengage (including when she purportedly threatened to stop communicating with him); described to her sexual activity including oral and vaginal sex without her pressuring or coercing him to do so; made arrangements to meet her, and eventually sent photos of his genitalia in hopes of getting a "sexy pic" of her in return and showed up at her on-base house to meet and engage in oral and vaginal sex with her. Despite Appellant's characterizations, none of the Government's actions rose to the level of inducement.

Appellant next claims that he "did not have a predisposition to commit a lewd act" because a search of his personal electronic devices and dormitory room "revealed nothing suggesting that he had a predisposition." At trial, the

Defense described "nothing" as "no evidence" on his computer media and no "[k]ids clothes, toys, journals, diaries" in his room. Appellant also points to the fact that he did not bring condoms to meet "Lizzdezz," although she told him to, and his repeated suggestions to meet "outside of her house rather than engaging in sexual activities." We determined that Appellant demonstrated a predisposition to commit the three convicted offenses, all of which he committed "without being offered extraordinary inducements." *Whittle*, 34 M.J. at 208 (citations omitted). Child pornography and contact with children are not necessary precursors to or prerequisites for someone to engage in sexual abuse of a child. Appellant never agreed to bring condoms but instead indicated he would not use them to have sex with "Lizzdezz." His request first to meet outside of her house was one of his precautions to confirm she was who she claimed to be and was the predicate to going inside the house for sex. As described above, Appellant took the initiative to commit the offenses. By doing so, he demonstrated his predisposition.

Finding beyond a reasonable doubt that the Government did not induce Appellant to commit the three offenses of which he was convicted and that Appellant was predisposed to commit all three, we conclude there was no entrapment. Having decided there was no entrapment, we further conclude the evidence is legally sufficient to support the findings of guilt on the charge and three specifications.

Appellant wrote to "Lizzdezz." She told him repeatedly she was a 14-year-old girl. Not only did he acknowledge her age, but he insisted on photographic proof that she was what she claimed to be. The Kik messages he wrote to "Lizzdezz" constituted his offense of communicating sexually explicit language to her on at least two occasions describing potential oral and vaginal sex with her. He also used Kik messages to commit the offense of broadcasting his genitalia to "Lizzdezz" on at least two occasions by sending two separate messages, one with a picture of his naked penis and another with a picture of his naked scrotum. Finally, he articulated in his Kik messages of 19 January 2016 his decision to go to her house ("But I wanna come over today") and penetrate her vulva and mouth with his penis ("You know you want to feel my bear c\*\*k at least once inside you," "Don't you wanna put those juicy lips on me," and "Don't you wanna suck my d\*\*k"). He then did the act of going to the house where "Lizzdezz" lived and walked to the front door, intending to engage in oral and vaginal sex with a 14-year-old girl once he was inside.

In assessing legal sufficiency, we are limited to the evidence produced at trial and required to consider it in the light most favorable to the prosecution. The bulk of the evidence produced at trial consisted of Appellant's own words in the form of the Kik messages he sent "Lizzdezz." While not all the evidence

was free from conflict, it did not have to be. We determined a reasonable fact-finder could have found beyond a reasonable doubt all the essential elements of Appellant's three convicted offenses: attempted sexual assault of a child, to wit: penetration of the child's vulva and mouth with his penis, and attempted sexual abuse of a child on divers occasions by committing lewd acts, to wit: communicating sexually explicit language and knowingly broadcasting his genitalia to the child.

## D. Post-Trial Process

Although not raised by Appellant, we also reviewed the post-trial processing of his court-martial. As in too many cases that have gone before, Appellant's case did not survive the post-trial process without error. First, the staff judge advocate's recommendation (SJAR) refers to a dishonorable discharge as "mandatory for each of the three offenses for which [Appellant] was found guilty." The SJA was wrong. However, we find the error did not prejudice Appellant because a dishonorable discharge was mandatory for one of his convicted offenses and the convening authority could not disapprove, commute, or suspend it. Articles 56(b) and 60(c)(4)(A), UCMJ, 10 U.S.C. §§ 856(b), 860(c)(4)(A).

Secondly, the addendum to the SJAR and the subsequent action by the convening authority made no specific mention of Appellant's two-part request for the convening authority "to reinstate my E-2 rank, and please consider granting 4 months of E-2 pay so my grandparents can continue to receive financial support." Appellant made the request in his "clemency matters" of 2 December 2016. It should have been understood to be not only a request to disapprove the reduction to E-1 but also a request to *defer* the adjudged reduction and automatic forfeiture of pay and allowances. Articles 57(a) and 58b, UCMJ, 10 U.S.C. §§ 857(a), 858b. Appellant was not eligible for a waiver, which can be for up to six months, because Appellant had no dependents. Appellant's request could only have been for deferment, which would have lasted for approximately four months from the effective date of automatic forfeiture until the convening authority's action.

The convening authority should have issued a written decision on Appellant's implicit deferment request and the reasons for the decision. R.C.M. 1101(c)(3); *United States v. Sloan*, 35 M.J. 4, 7 (C.M.A. 1992). The absence of such a writing constitutes error. However, Appellant failed to identify the error and thus to make a colorable showing of possible prejudice. *See United States v. Jalos*, 2017 CCA LEXIS 607, at *6 (A.F. Ct. Crim. App. 5 Sep. 2017) (unpub. op.) (citations omitted) ("Even when there is error in the convening authority's action on a deferment request, relief is only warranted if an appellant makes a colorable showing of possible prejudice.") Nevertheless, we caution staff judge advocates and convening authorities to read clemency sub-

missions carefully for what is being requested, even if no "magic word" such as "defer" is used.

## III. CONCLUSION

The findings of guilt and the sentence are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. § 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court