# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————————

### No. 201800056

———————————————

### UNITED STATES OF AMERICA
Appellant

v.

### MICHAEL D. HAMBY
Sergeant (E-5), U.S. Marine Corps
Appellee

———————————————

Appeal by the United States Pursuant to Article 62, UCMJ

Military Judge: Lieutenant Colonel E.H. Robinson, Jr., USMC.
For Appellant: Lieutenant Clayton S. McCarl, JAGC, USN;
Captain Sean M. Monks, USMC.
For Appellee: Captain Thomas R. Fricton, USMC.

———————————————

Decided 28 August 2018

———————————————

Before HUTCHISON, FULTON, and TANG, *Appellate Military Judges*

———————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

———————————————

FULTON, Senior Judge:

This is an interlocutory appeal taken by the government under Article 62, Uniform Code of Military Justice (UCMJ).[1] Following a pretrial hearing, the military judge denied the government's request to admit two exhibits prior to trial, and the military judge further ruled the exhibits would not be admissible at trial. The exhibits each contain a series of emails in which, according to the government, the appellee is one of the correspondents. The government

---

[1] 10 U.S.C. § 862 (2016).

does not know the identity of the second person in either series of emails; they are identified by name in the emails as "Alex" and "Ryan [B]." We will refer to the two email chains as the Alex chain and the Ryan chain. The government contends that the emails represent two separate conversations, one with Alex and one with Ryan, in which the appellee discusses plans to sexually abuse his stepdaughter. The Alex chain and Ryan chain email exchanges appear to have been conducted through the Craigslist anonymous email relay, meaning the emails from Alex and Ryan did not contain the senders' true email address but rather an anonymous Craigslist email address.

We are asked to decide if we have jurisdiction over this appeal and, if so, whether the military judge abused his discretion by not admitting this evidence. We conclude that we have jurisdiction to hear this appeal and that the military judge abused his discretion with respect to both email chains.

## I. BACKGROUND

### A. The allegations against the appellee

The appellee faces five charges and 14 specifications. Three of the charges (the Charge and Additional Charges I and II), are relevant to this appeal.

In the five specifications under the Charge and two specifications under Additional Charge I, the government alleges that the appellee attempted to rape and sexually abuse two children, and attempted to conspire to rape and sexually abuse two children. These charges stem from an undercover Naval Criminal Investigative Service (NCIS) operation. The government alleges that an undercover special agent contacted the appellee about the appellee's Craigslist ad captioned "young girls, incest, taboo." The agent presented as the mother of two children, four and eight years old, and she agreed to allow the appellee to come to her residence on Camp Foster, Okinawa, Japan, to engage in sexual acts with the children. The special agent exchanged emails with an email address "mattdomen@mail.com" and through the "Kik" messenger application. The appellee agreed to a face-to-face meeting with the special agent at the Camp Foster food court. As he was leaving the food court with the agent to go the undercover agent's home, NCIS agents apprehended the appellee.

Additional Charge II and its four specifications allege that the appellee raped and sexually abused the his toddler stepdaughter, KLS, as well as another unnamed child.

**B. The government's proffered evidence**

*1. Government motion to admit emails under MIL. R. EVID. 414*

Before trial, the government filed two motions to pre-admit evidence. The first motion, Appellate Exhibit XLI, moves for the admission of two email chains under MILITARY RULE OF EVIDENCE (MIL. R. EVID.) 414.[2] The government avers the appellee's email provider turned over the two email chains in compliance with a search warrant for the contents of the appellee's email account, named "mattdomen@mail.com." The Alex chain appears on its face to be a series of emails, exchanged through the Craigslist email relay between a user who identifies himself as Alex and another Craigslist user identifying himself as Matt. The government claims to have identified Matt as the appellee because the emails were found in the mattdomen@mail.com email account.

The government argues the Alex chain shows that the appellee and Alex made and carried out a plan to sexually abuse the appellee's stepdaughter. We have here reproduced some of the relevant emails, stripped of headings and addresses:

15 October 2016 at 1310

[Alex]: Hey im Alex and im 25 and into things that would probably make my whole family disown me but what they dont know cant hurt them right? Anyways im puerto rican, 5'9" and fit/slim if you needed to know. Discreet as well so no worries there. Ive talked to all sorts of taboo lovers mostly of the illegal kind and theyre some of the best people i get along with for some reason so hit me up and tell me what you're into if you want. It'd be good to know one more like-minded person

15 October 2016 at 1401

[Matt]: I like everything from beastiality to young incest. Mostly young taboo for me. I have a young daughter and looking for someone to play with us

15 October at 1532

[Alex]: Dont know if you got my last message but im definitely into young taboo and id love to play with you guys. I can get on base if you're there or meet up in public to see if im safe and real and not a dangerous guy. Just get along first if you want ya know?

---

[2] MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.) (MCM).

16 October at 1236

[Matt]: That might be nice to do a meet and greet first. It's hard to get a time to do things with her since wife is a stay at home mom. She leaves periodically on appointments and such so those are the best times. Have you had experiences or know anyone else with connections to younger "subjects" I'd like to play with others or swap subjects for play if that makes sense

. . . .

18 October at 2153

[Matt]: Nice. One thing that may be an issue, if the wife does leave and your able to have fun with her, are you willing to be forceful. Sometimes she's hesitant obviously she's inexperienced. I don't mind

18 October at 2203

[Alex]: Ill definitely be willing to be forceful. Would you mind me forcing my cock in her throat and making her gag? Or shall i be gently forceful?

18 October 2016 at 2235

[Matt]: If it doesn't leave marks im ok

. . . .

22 October at 1502

[Matt]: She is leaving now

22 October at 1503

[Alex]: Heh finally. So how do I get there

22 October at 1509

[Matt]: leave the parking of naval hospital and get turn left on wire mountain road, take a right on san jacinto road and then you will take your first left on pauma st. next you will take the first right and stay on that road. park next to the the third set of mailboxs on the right side of the road. but not in front of it obviously let me know when you get there

22 October at 1517

[Alex]: Had to go past the third set and park on the next street just past it. Im on temecula street if thats right

22 October at 1518

[Matt]: yes, thats fine. just didnt want you parked in front of the house. just walk back the direction you drove on the side with the mailboxes. i will stop you when you get in front of my house and invite you in

22 October at 1629

[Alex]: That was definitely fun and interesting. My god what timing have we got though. A second later and it might've gotten you and me into serious trouble

22 October at 1836

[Matt]: Yeah haha. That was fun. It all worked out though

2 December at 0111

[Alex]: Hey its Alex. So are we never gonna meet up again to play with your kid? If its something i did wrong let me know at least, dont just leave me hanging cause that would be messed up

In the same motion, the government moved to admit the Ryan email chain under MIL. R. EVID. 414. The Ryan chain appears on its face to be a chain of emails between a person using a Craigslist email address that according to the government is associated with the appellee and another person identified as Ryan [B]. Some relevant selections of this chain are reproduced here without headings and addresses, and edited to remove email-related artifacts:

5 October 2016 at 1639

[Ryan]: Remember I'm 3 hours away... I will leave rn if u can guarantee I get to play with her... U could tell your wife your taking her to get food

5 October 2016

[Craigslist address]: You can be here by 8?

. . . .

5 October at 1712

[Ryan]: On my way! How do u want this to play out!? I'm so hard rn... Address?

5 October

[Craigslist address]: It won't be long depending on when you get here my wife will be back about 830. But you can do whatever till then

5

5 October at 1720

[Ryan]: K cool what's the address? Once I type the address in the GPS I will tell you what time exactly I will be there

5 October

[Craigslist address]: 127 Temecula st oceanside ca 92058

5 October at 1722

[Ryan]: Gps says 750... See u then

5 October

[Craigslist address]: Try to be quick, if the wife comes back early I won't be able to do anything because that's around daughters bed time.

5 October at 1725

[Ryan]: Yeah I will be superquick probably just eat her ass and pussy make out with her and have her lick my cock... I could probably be in and out in 5 to 10 minutes

5 October

[Craigslist address]: Perfect

. . . .

5 October

[Craigslist address]: Wifes here

5 October at 1901

[Ryan]: Fuck man... This is fucked up

5 October

[Craigslist address]: She was supposed to get her nails done then goto walmart, but she changed her mind and didn't want to drive that far for groceries

5 October at 1904

[Ryan]: It's ok I have Monday off how does that work

In its motion, the government argued that the two email chains tended to show that the appellant committed other offenses of child molestation, and that their probative value was not substantially outweighed by the danger of unfair prejudice.

*2. Government motion to admit evidence under MIL. R. EVID. 404(b)*

In a separate motion, the government argued that these same email chains were admissible under MIL. R. EVID. 404(b) to show that the appellee had a sexual motive when he met the special agent at the food court; that he intended to engage in sexual acts with children; that they tended to show absence of mistake or accident; and that they tended to show that the appellee had a plan to engage in sex with children. In addition to the emails offered under MIL. R. EVID. 414, in this motion the government also sought to admit advertisements and portions of other email conversations that the government alleged had been created by the appellee. On their face, the advertisements and other email chains relate—sometimes obliquely, sometimes explicitly—to their author's desire to have sexual encounters with children.

*3. The motions session*

The court-martial heard both motions on the same day. In support of its motions, the government provided the following evidence:

1) A disc containing the Alex and Ryan email chains;

2) A compilation of those email chains, arranged for ease of reading;

3) A copy of the notice the government provided to the defense of the government's intent to use the evidence in question;

4) Craigslist advertisements the government maintained had been created by the appellee, which were provided to the government pursuant to a subpoena for all Craigslist advertisements linked to the email mattdomen@mail.com;

5) A photo of the appellee and his step-daughter offered so that the court could compare it with a photo included in the Alex email chain;

6) "Kik" messenger chats purportedly between the appellee and the undercover NCIS agent offered to show similarities in the language;

7) A recording of the appellee's verbal statement to NCIS in which the NCIS agent confronted the appellee with emails sent from mattdomen@mail.com to the undercover agent's email account, which the appellee admitted he sent, and which account the appellee admitted owning and using;

8) A Permissive Authorization to Search showing that the appellee gave permission to search an Android phone;

9) A copy of an official Marine Corps personnel record showing that the appellee lived on Temecula Street when he had been stationed at Camp Pendleton; and

10) A map of Camp Pendleton.

At the hearing, the government argued that the two email chains constituted evidence that the appellee committed other offenses of child molestation as defined by MIL. R. EVID. 414(d)(2)(G). Specifically, the government argued that the email chain showed that the appellee conspired with Alex and Ryan to sexually assault the appellee's step-daughter. Consistent with the government's pleading, the trial counsel also argued that the evidence tended to show the appellee's motive, plan, absence of mistake, and intent to sexually abuse children.

### 4. The military judge's ruling

The military judge denied both motions to pre-admit the Alex and Ryan email chains in a single written ruling. The ruling does not address any evidence the government sought to admit other than the two email chains. In his ruling the military judge made 19 numbered findings of fact and five numbered conclusions of law.

With respect to the admissibility of the email chains under MIL. R. EVID. 414, the military judge found that to infer from the emails that the appellee had committed other, uncharged acts of child molestation was "speculation at its zenith."[3] Several factors led the military judge to this view. First, the military judge was troubled by the apparent variance between the email address used in the search (mattdomen@mail.com) and the email address attributed to the appellee in the transcript of his statement to NCIS (mattdoman@mail.com). Aside from having a "similar sounding" email address, the military judge found that the government had presented "no additional evidence that can place the accused in control of the e-mail account at the time of the messages . . . [.]"[4] Additionally, the military judge noted that the government had provided no evidence that Alex or Ryan actually existed or that they engaged in the online correspondence the government sought to offer. The military judge also determined that the government failed to establish that the appellee committed another act of child molestation because the e-mails purportedly between Alex and the appellee did not mention any acts of child molestation after the appellee and Alex allegedly met at the appellee's Temecula home. Similarly, since the email exchanges indicate that Ryan and the appellee were ultimately unable to meet, and

---

[3] Appellate Exhibit (AE) LXXXIII at 6.

[4] *Id.* at 5.

because Ryan remained unidentified, the military judge found that the government could not show that Ryan and the appellee had conspired to commit an act of child sexual molestation.

Having found that the proffered evidence was not evidence of any other offense of child molestation, the military judge continued his MIL. R. EVID. 414 analysis by determining that the evidence did not make any fact of consequence more or less probable and was therefore not relevant under MIL. R. EVID. 401 and 402. Since the proffered evidence was not evidence of a prior act of child molestation and not relevant in any other respect, the military judge naturally concluded that the evidence also failed the MIL. R. EVID. 403 balancing test.

The military judge also considered the admissibility of the email chains under MIL. R. EVID. 404(b). Citing his own conclusions about the emails' lack of relevance to the case, the military judge concluded the emails did not support a finding that the appellee had committed any other uncharged acts and, even if they did, that the emails would still be inadmissible under MIL. R. EVID. 403 balancing test.

The military judge's determination that the emails were not relevant is based in part on a finding that the government failed to authenticate the emails. The military judge seems to have anticipated that the government would authenticate the emails through the testimony of an NCIS agent and by a certified domestic record of a regularly conducted activity under MIL. R. EVID. 902(11). The government provided no such testimony or certificate.

## II. DISCUSSION

### A. Scope of review and jurisdiction

In cases over which a military judge presides and a punitive discharge can be adjudged, Article 62, UCMJ, gives us jurisdiction over government appeals of a military judge's ruling excluding evidence that is substantial proof of a fact material in the proceeding.[5] Our jurisdiction is narrowly circumscribed, and we construe this jurisdictional grant strictly.[6] Because our jurisdiction only extends to the evidence described in Article 62, UCMJ, we must determine what evidence has been excluded by the military judge and whether that evidence is substantial proof of a fact material in the proceeding.[7]

---

[5] 10 U.S.C. §862(a)(1)(B) (2016).

[6] *Clinton v. Goldsmith*, 526 U.S. 529, 535 (1999).

[7] *See United States v. Jacobsen*, 77 M.J. 81, 86 (C.A.A.F. 2017).

*1. Has evidence has been excluded?*

The government asks us to clarify the military judge's ruling to determine whether he excluded all of the evidence the government proffered under MIL. R. EVID. 404(b). A desire to have an appellate court clarify a lower court's order is not a ground for an appeal under Article 62, UCMJ. But it is necessary for us to determine what evidence has been excluded so that we do not exceed our authority under Article 62. We have reviewed the military judge's ruling, bearing in mind that government appeals are disfavored, and that we should construe our authority narrowly. We conclude that the military judge's ruling only clearly excludes the two email chains at issue. His ruling does not exclude the remainder of the government's proposed MIL. R. EVID. 404(b) evidence. Therefore, our jurisdiction only runs to the two email chains.

The appellee contends that we lack jurisdiction altogether because the military judge has not actually excluded any evidence. He argues that the military judge simply denied a motion to pre-admit evidence and, since no evidence has actually been excluded, we are without jurisdiction to entertain this appeal. We find, however, that the military judge did in fact exclude the Alex and Ryan email chains. Had the military judge in this case simply declined to admit evidence until the government met certain foundational thresholds, such as presenting a witness who could authenticate the emails, we would agree that the ruling could not confer jurisdiction on us.[8] But here the military judge excluded both email chains not only for surmountable foundational reasons, but because he found them inadmissible altogether under the Military Rules of Evidence. The military judge's ruling is not a preliminary finding that the government has failed to authenticate the evidence. It has finally excluded the emails from "the pool of potential evidence that would be admissible."[9] This jurisdictional prong is satisfied.

*2. Is the excluded evidence substantial proof of a fact material in the proceeding?*

Assuming that the government could authenticate the evidence (an issue we address below), the two email chains have some tendency to show that the appellee has motive and a propensity to sexually abuse children. Whether the appellant had a motive or a propensity to sexually abuse children is a material factual question in this case. This is especially true because the appellee told NCIS he was merely engaging in fantasy when he discussed sexually abusing the children of the undercover NCIS agent. The admission of the two

---

[8] *United States v. Bradford*, 68 M.J. 371, 373 (C.A.A.F. 2010).

[9] *United States v. Wuterich*, 67 M.J. 63, 73 (C.A.A.F. 2008) (quoting *United States v. Watson*, 386 F.3d 304, 313 (1st Cir. 2004)).

email chains would constitute substantial proof of a relevant fact. Evidence that appellee had the motive and propensity to sexually abuse children is relevant to whether the appellee attempted to rape and sexually abuse two children and attempted to conspire to rape and sexually abuse two children as the government alleges. This jurisdictional prong is also satisfied.

We find that we have jurisdiction to review the military judge's ruling excluding the two email chains.

## B. Standard of review on appeal

In this appeal we may act only with respect to matters of law.[10] We are bound by the military judge's factual determinations unless they are unsupported by the record or clearly erroneous, and may not find facts in addition to those found by the military judge.[11] We review the military judge's conclusions of law *de novo*.[12] We review a military judge's ruling on admissibility of evidence for abuse of discretion.[13] To overturn the trial judge's ruling on appeal, it must be "arbitrary, fanciful, clearly unreasonable or clearly erroneous."[14]

## C. Authenticity

The government avers that the military judge abused his discretion by excluding the two email chains because the government failed to authenticate them. We agree.

Authentication establishes, by way of preliminary evidence, a connection between the evidence offered and the relevant facts of the case. The connection is necessary in order to establish the relevance of the particular object or item, since an object or item is not relevant unless it is attributed to, or connected with, a particular person, place, or issue in a case.[15] In courts-martial, authentication is governed by MIL. R. EVID. 901 and 902. Rule 901 provides generally for the authentication of evidence through the introduction of preliminary evidence "sufficient to support a finding that the item is what the proponent claims it is" and provides a non-exclusive list of proofs by

---

[10] Art. 62(b), UCMJ; R.C.M. 908(c)(2).

[11] *United States v. Gore*, 60 M.J. 178, 185 (C.A.A.F. 2004).

[12] *United States v. Keefauver*, 74 M.J. 230, 233 (C.A.A.F. 2015).

[13] *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010).

[14] *United States v. Taylor*, 53 M.J. 195, 199 (C.A.A.F. 2000) (citation and internal quotation marks omitted).

[15] Glen Weissenberger & James J. Duane, 1 Weissenberger's Federal Evidence § 901.1 (2018).

which a party might establish the authenticity of a proposed item of evidence. MIL. R. EVID. 902 lists the types of evidence that are self-authenticating and therefore require no extrinsic evidence of authenticity in order to be admitted. We review the military judge's determination on authentication for an abuse of discretion.[16] A military judge abuses his discretion when his findings of fact are clearly erroneous or if his decision is influenced by an erroneous view of the law.[17]

The military judge found that the government failed to show that the emails are certified domestic records of a regularly conducted activity and therefore self-authenticating under MIL. R. EVID. 902(11). The military judge erred by applying this rule. The government did not attempt to show that the documents are self-authenticating. Instead, the government claims that the contents of the emails themselves, along with other circumstantial evidence introduced by the government, sufficiently authenticate this evidence under MIL. R. EVID. 901.

MIL. R. EVID. 901(b)(4) provides for the authentication of evidence by the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." In support of its argument that it has met the relatively low threshold required for authentication, the government points to links between the offered emails and the extrinsic evidence about the appellee the government introduced.

The emails appear to have been sent by someone using the email address "mattdomen@mail.com." This corresponds to the appellee's statement in which he admitted to using this email address. When confronted with the content of emails sent to the undercover NCIS agent from the email address mattdomen@mail.com, the appellee admitted he owned that email address. He explained why he chose the email address. He admitted he sent those emails, and he explained his rationale behind sending the emails. The emails also contain a picture of a child purported to be the author's step-daughter. The government introduced a picture of the appellee with his stepdaughter, and argues that it tends to show that the appellee is the author of the emails. The emails instruct the second parties to come to an on-base residence on Camp Pendleton. The government introduced evidence that the address and directions in the e-mails correspond to the appellee's address on Camp

---

[16] *United States v. Lubich*, 72 M.J. 170, 173 (C.A.A.F. 2013).

[17] *Id.* (citations omitted).

Pendleton. These types of factors can be sufficient to satisfy the MIL. R. EVID. 901(b)(4) authentication requirements for email evidence.[18]

We may not find that the appellee is in fact the author of the emails, and we do not suggest that the military judge must come to this conclusion. Ultimately, the authorship of the emails may be a matter for the trier of fact to decide. But the military judge erred by determining that because this evidence was not self-authenticating, it could not therefore have been authenticated. The state of the evidence suggests that the military judge should have considered this evidence under MIL. R. EVID. 901(b)(4). Because the military judge was operating under an erroneous view of the law, we conclude he abused his discretion in finding the government failed to authenticate the e-mails.

## D. MIL. R. EVID. 414 and 404(b) analysis

### 1. Applicable law

MIL. R. EVID. 414 provides for the admission of an accused's similar crimes in child sexual offense cases. In order to be admissible, the military judge must determine: (1) that the accused is charged with an act of child molestation as defined by MIL. R. EVID. 414(d)(2); (2) that the proffered evidence is evidence of his commission of another offense of child molestation as defined by the rule; and (3) that the evidence is relevant under MIL. R. EVID. 401 and 402.[19]

If the evidence meets these requirements, the military judge must then determine whether it is admissible under MIL. R. EVID. 403 and the non-exhaustive factors in *United States v. Wright*.[20] These include: strength of proof of the prior act (e.g. a conviction versus mere gossip); probative weight of the evidence; potential for less prejudicial evidence; distraction of the factfinder; time needed for proof of prior conduct; temporal proximity; frequency of the acts; presence or lack of intervening circumstances; and relationship between the parties.

---

[18] *See Lubich*, 72 M.J. at 175 (computer data contained numerous references to appellant's personal computer information satisfies MIL. R. EVID. 901(b)(4); *See also United States v. Siddiqui*, 235 F.3d 1318, 1322-23 (11th Cir. 2000); *United States v. Fluker*, 698 F.3d 988, 999-1000 (7th Cir. 2012).

[19] *United States v. Yammine*, 69 M.J. 70, 73-74 (C.A.A.F. 2010).

[20] 53 M.J. 476, 482 (2000).

*2. Review of military judge's* MIL. R. EVID. *414 ruling*

The military judge correctly found that the appellee is charged with an act of child molestation as defined by MIL. R. EVID. 414(d)(2). Next, the military judge found that "aside from an account name that is similar to the one the accused acknowledged using in the past, there is no additional evidence that demonstrates the accused wrote any of the alleged messages."[21] This finding is clearly erroneous. As we noted in our discussion of authenticity, the government provided other evidence, both internal to the emails and extrinsic evidence, that the appellee was the author of the emails.

Both email chains tend to show that the appellee conspired to commit acts of child molestation with Alex and Ryan against the appellee's young stepdaughter. Both Alex and Ryan were quite explicit about the sexual acts they hoped to perform with the appellee's step-daughter, and the emails demonstrate both the existence of an agreement to commit these acts of sexual molestation and the overt act of travelling to or two hours toward the appellee's home in furtherance of that agreement. Indeed, the Alex email chain suggests very strongly that the object of the conspiracy was accomplished because Alex wrote the encounter was "fun and interesting" and suggested the two men were nearly caught and would have been in "serious trouble" if they had been caught. The military judge, however, concluded that the government failed to meet its burden to establish a prior act of child molestation occurred at all. Specifically, the military judge noted the absence of any mention of specific acts of molestation in the e-mails between Alex and the appellee following their alleged meeting. This finding is clearly erroneous. The conspiracy between the appellee and Alex *was the prior act of child molestation* as that term is defined in the rule. We are convinced that the military judge erred by finding that the emails did not constitute *any evidence* that the appellee conspired to commit an act of sexual molestation.

The military judge likewise erred by finding that the emails were not relevant under MIL. R. EVID. 401 and 402. The military judge's determination that the emails were not relevant is based on his faulty view that the government did not demonstrate that the appellee authored the emails. The military judge's failure to recognize the existence of any evidence that the appellee authored the emails affected his ruling on relevance. Because there is some evidence that the appellee wrote the emails, the emails are logically relevant to the case. They tend to show that the appellee is motivated to engage in sexual acts with children, and that he has a propensity to arrange with others online to engage in the sexual abuse of children.

---

[21] Appellate Exhibit LXXXIII at 5.

Turning to MIL. R. EVID. 403 and the *Wright* factors, and bearing in mind that *Wright* itself counsels that "evidence of prior sexual offenses should ordinarily be admissible,"[22] we find that the military judge misapplied the *Wright* factors with respect to both email chains.

a. Strength of proof

The military judge's failure to recognize evidence that the appellee is the author of the emails affected his analysis of this factor. The emails consist of correspondence that the trier of fact may well attribute to the appellee in which the appellee is seen entering agreements to sexually abuse his step-daughter. The appellee's contention that the email chains are only evidence of fantasy role playing is substantially undermined by the specific nature of the arrangements in the email, the fact that Ryan's visit was thwarted, and the care taken in the emails to avoid being caught. Of course the real meaning of the emails will be determined by the trier of fact. But the military judge's erroneous finding that there was no evidence the appellee authored the emails affected his application of this factor.

b. Probative weight of the evidence

To the extent the government can demonstrate that the appellee is the author of the emails, the evidence is probative of the appellee's motivation to sexually abuse children and his propensity to arrange with others online to sexually abuse children. The military judge erred by failing to recognize evidence that the appellee is the author, and he therefore misapplied this factor.

c. Potential for less prejudicial evidence

The military judge concluded that the less prejudicial evidence is available to the court-martial in the form of two photographs purportedly depicting the appellee engaging in sexual acts with a young child and the testimony of the undercover agent pertaining to her interactions with the appellee. While this evidence would naturally tend to show that the appellee has a propensity to sexually abuse young children, we agree with the government that the military judge erred as a matter of law by concluding evidence of charged misconduct would be available to the court-martial as a substitute for the emails.[23] Charged conduct may not be the basis for a finding that the appellee has a propensity to commit crimes of sexual abuse against children. This error also affected the military judge's ruling.

---

[22] *Wright*, 53 M.J. at 482 (quoting *United States v. LeCompte*, 131 F.3d 767, 769 (8th Cir. 1997)).

[23] *See United States v. Hills*, 75 M.J. 350, 356 (C.A.A.F. 2016).

d. Distraction of the factfinder and time needed for proof of prior conduct

The military judge found that the discrepancy between the email address on the emails and the address as transcribed from the appellee's interview (mattdomen@mail.com and mattdoman@mail.com) would result in a trial within a trial. This is clearly erroneous. The trier of fact will either accept the government's simple explanation—that the difference results from an inexperienced legal clerk making a phonetic transcription—or it will not. But the question will not detain them long, and the issue will not be a significant distraction. Nor will this evidence take long to present. At most, the evidence will require the testimony of an agent to explain how the government came into possession of the evidence, and why the government believes the emails pertain to the appellee.

The military judge's decision that the proffered evidence is not admissible was affected by both clearly erroneous factual findings and error of law. As a result, we conclude the military judge abused his discretion in excluding the e-mails.

*3. Review of military judge's* MIL. R. EVID. *404(b) ruling*

The military judge concluded that the proffered evidence did not reasonably support a finding that the appellee engaged in any act that made a fact of consequence more or less probable. He further found that even if the email chains had some tendency to prove motive, intent, plan, or absence of mistake, the emails should be excluded under MIL. R. EVID. 403.

We review the admissibility of MIL. R. EVID. 404(b) evidence using the *Reynolds* test:

1. Does the evidence reasonably support a finding by the court members that the [appellee] committed prior crimes, wrongs or acts?

2. What "fact . . . of consequence" is made "more" or "less probable" by the existence of this evidence?

3. Is the "probative value . . . substantially outweighed by the danger of unfair prejudice"?[24]

The military judge's application of the *Reynolds* test is affected by the same failure to appreciate evidence that the appellee authored the emails in question. This failure to consider evidence in the record that the appellee wrote the emails, led the military judge to conclude that the government had provided no evidence (other than similar sounding email addresses) that the

---

[24]*United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989) (ellipses in original) (internal citations omitted).

appellee was party to the email chains in question, and that in these email chains he arranged for the sexual abuse of his young step-daughter.

The emails have the potential to demonstrate that the appellee was motivated to sexually abuse young children. They also may tend to demonstrate the existence of a common scheme or plan in which the appellee meets strangers online and arranges with them to engage in sexual abuse of young children. They inform the appellee's motive to meet the undercover NCIS agent in the food court as being a motive to have sex with her children, and not a motive to engage in fantasy. The military judge's errors contributed to his finding that this evidence is not relevant.

### III. CONCLUSION

The appeal is granted, and the military judge's ruling in Appellate Exhibit LXXXIII is set aside. The record of trial is returned to the Judge Advocate General for transmittal to the convening authority.

Senior Judge HUTCHISON and Judge TANG concur.

FOR THE COURT

RODGER A. DREW, JR.
Clerk of Court