# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39709**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Christopher D. CLARK-BELLAMY**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 27 October 2020

————————————

*Military Judge:* John C. Degnan.

*Sentence:* Sentence adjudged 29 March 2019 by GCM convened at Holloman Air Force Base, New Mexico. Sentence entered by military judge on 22 April 2019: Dishonorable discharge, confinement for 1 year and 6 months, forfeiture of all pay and allowances, and reduction to E-1.

*For Appellant:* Major Benjamin H. DeYoung, USAF; Major Yolanda D. Miller, USAF.

*For Appellee:* Captain Kelsey B. Shust, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RICHARDSON, and MEGINLEY, *Appellate Military Judges.*

Judge MEGINLEY delivered the opinion of the court, in which Senior Judge POSCH and Judge RICHARDSON joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

MEGINLEY, Judge:

A general court-martial composed of a military judge sitting alone convicted Appellant, in accordance with his pleas and a pretrial agreement (PTA), of one specification of wrongfully and knowingly possessing child pornography, in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1] The military judge sentenced Appellant to a dishonorable discharge, confinement for two years, forfeiture of all pay and allowances, and reduction to the grade of E-1. Consistent with the terms of the PTA, the convening authority approved only one year and six months of confinement. Otherwise, the convening authority approved the sentence as adjudged.[2]

On appeal, Appellant raises three issues: (1) whether the military judge abused his discretion when he considered a victim impact statement; (2) whether Appellant is entitled to sentence relief because his case was not docketed with this court within 30 days of action by the convening authority; and (3) whether Appellant is entitled to sentence relief because the record of trial is defective and incomplete. Regarding Appellant's third assertion, given that the defects were either resolved or waived, we find this assertion does not require further discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). Finding no prejudicial error, we affirm the findings and sentence.

## I. BACKGROUND

Appellant entered active duty in September 2012. At the time of the offense alleged in the charge and its specification, he was stationed at Holloman Air Force Base (AFB), New Mexico. On 8 January 2018, Appellant used his phone to post a child pornography image to a group chat on "Kik," a messenger application. On 5 March 2018, Homeland Security Investigations (HSI), Las Cruces, New Mexico, received notice, through Kik, that Appellant had uploaded illegal content to its platform. After identifying Appellant as the subscriber who uploaded the image, and that he lived on Holloman AFB, HSI notified the Air Force Office of Special Investigations (AFOSI); HSI agreed to turn the case over to AFOSI agents for investigation.

---

[1] Unless otherwise noted, references to the Uniform Code of Military Justice (UCMJ), the Rules for Courts-Martial (R.C.M.), and the Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*).

[2] As part of the pretrial agreement (PTA), the convening authority also agreed to not refer to trial by court-martial any additional misconduct concerning Appellant's alleged distribution of child pornography on or about 24 January 2018.

On 5 April 2018, an AFOSI agent obtained a search authorization from a Holloman AFB military magistrate to search Appellant's electronic devices for child pornography. Subsequently, AFOSI agents seized Appellant's hard drive and cellular phone. On 6 April 2018, Appellant was interviewed by AFOSI agents. Following a rights advisement, Appellant declined counsel and answered questions. During this interview, Appellant denied sending the image but also stated his fiancée had access to his phone, although but he did not think she would have uploaded the image.

A subsequent search of Appellant's electronic devices conducted by the Defense Computer Forensics Laboratory found video and image files of child pornography on Appellant's phone and a hard drive. During his providence inquiry, Appellant acknowledged he posted a child pornography image on Kik to a group chat that was interested in these types of photographs. Appellant also admitted he used "Tumblr," another social media site, to purposely look for child pornography; used search terms to look for child pornography; and that he possessed four videos and over 20 photographs, on two devices, containing child pornography.

Trial counsel reached out to KF, a known child pornography victim from the series known as "Vicky," whose sexual abuse was depicted in the images in Appellant's collection.[3] During presentencing, trial counsel moved to introduce a written unsworn statement (Court Exhibit 1) and a prerecorded (video) oral unsworn statement from KF (Court Exhibit 2). The military judge made it clear that both exhibits were not government exhibits but were court exhibits. Ms. CLH, KF's attorney, provided Court Exhibit 2 to trial counsel, on behalf of KF, for the court to consider. Neither KF, nor her attorney, were present during the court-martial proceedings; however, Ms. CLH provided a signed letter to the court verifying that she had represented KF since 2008, that "it was [KF's] desire to have her victim impact statement dated 2011 and or her video impact statement used in the proceeding, US v. SrA Christopher D. Clark-Bellamy," and "[be] considered by the military judge presiding in this matter." Ms. CLH

---

[3] The record indicates KF in Appellant's case is the same KF in *United States* v. *Barker,* 77 M.J. 377, 382 (C.A.A.F. 2018). The CAAF noted in its *Barker* opinion, "We have no doubt that KF is indeed the child in the 'Vicky series,' and that she is a 'victim' of child pornography for the purposes of R.C.M. 1001A." 77 M.J. at 381. The "Vicky" child pornography series refers to the recorded rape and abuse of KF by her father when she was ten years old. *See United States v. Kearney*, 672 F.3d 81 (1st Cir. 2012); *United States v. McDaniel*, 631 F.3d 1204 (11th Cir. 2011).

also stated she had "specifically communicated with [KF] concerning this proceeding to obtain her consent and direction concerning use of her impact statements." Ms. CLH's letter was marked as Appellate Exhibit V.[4]

Trial defense counsel objected to the content of KF's victim impact statements, arguing that KF's statement made reference to evidence or facts that were not at issue in the case, including KF's statement related to other intervening actors, "like people who have stalked her." Trial defense counsel also objected to Ms. CLH's letter, Appellate Exhibit V, for lack of authenticity. The military judge acknowledged the authentication issues, noting Ms. CLH's letter was neither notarized nor certified, and that it "is just a memorandum." The military judge considered the issue of Ms. CLH's statement and believed it "an interlocutory question that could be resolved by her testifying on the telephone to [the trial court] and allowing both sides the opportunity to question her and to cross-examine her to establish the authenticity of Appellate Exhibit V." Trial counsel argued that under Mil. R. Evid. 901, he did not believe there was an authenticity argument, in that a judge's discretion to exclude evidence on authenticity grounds is "limited to deciding whether sufficient proof exists for a reasonable juror to determine the authenticity of the document." Trial counsel later again argued, after Ms. CLH testified telephonically, the "government does not believe there is an authenticity requirement under M[il]. R. E[vid]. 901 as to an Appellate Exhibit."

Trial defense counsel stated that even if the document was authenticated, he objected to Ms. CLH's telephonic testimony to introduce KF's statement. Trial defense counsel argued if it was so important for KF's statement to be considered, the Government had ample time to produce Ms. CLH to testify in advance of trial.

The military judge, believing it would be helpful for the record to have Ms. CLH articulate facts about her letter, overruled trial defense counsel's objection to her testifying telephonically on the issue of authentication. Citing R.C.M. 703(b)(1) (2016 *MCM*), the military judge opined:

> [T]he Court is considering the testimony of Ms. [CLH] as testimony on an interlocutory question. Understanding, defense, you're not consenting to this. But looking at the factors under

---

[4] Trial counsel also added Appellate Exhibits VI through IX to the record to provide the military judge with information regarding Ms. CLH's bar license, her Seattle law practice, and correspondence with the base legal office regarding KF's representation. The correspondence shows Ms. CLH received a redacted charge sheet for Appellant's case, as well as an excerpt of a report from the National Center for Missing and Exploited Children (known more commonly as NCMEC) identifying the series of which KF was a part.

the rule, these are factors to be considered but are not limited to the cost of producing the witness, the timing of the request for the production of [sic] witness, potential delay, and the interlocutory proceeding that may be caused by the production of the witness, the willingness of the witness to testify in person, the likelihood of significant interference with military operational deployments, mission accomplishment, or essential training and/or child witness traumatic effects of providing the in-court testimony.

Ms. CLH, who was on standby to participate at Appellant's sentencing hearing, was called as a witness by the court, sworn, and testified telephonically on the interlocutory issue. Ms. CLH stated it was her understanding the trial was for the "prosecution of [Appellant] that involves child sex abuse exploitation images of [her] client, who is the victim in the Vicky series." Trial defense counsel continued his examination as follows:

> **Q** [Trial Defense Counsel]. Could you explain a little bit what your knowledge of this case is?
>
> **A** [Ms. CLH]. I don't know much beyond that. As I explained before, I'm not at my office. . . . I had left the office by the time I learned that my testimony was needed.
>
> **Q**. Were you at any time made aware of what the evidence in this case was?
>
> **A**. I couldn't say that I was aware of the specific evidence in detail. And I'm actually never advised of that in either civilian prosecutions or the military prosecutions that I speak to prosecutors about, other than the fact that my client's images are in a particular defendant's collection and what he or she may have done with them.
>
> **Q**. And was that in this case that you were advised of that?
>
> **A**. I was advised that my client's sexual assault images in this case were in [Appellant's] collection, yes.
>
> **Q**. Were you told anything about videos?
>
> **A**. I may have been told about it. In fact, it's my understanding that primarily the Vicky series is made up of videos.

After Ms. CLH's testimony, trial defense counsel argued against consideration of KF's victim impact statement, specifically highlighting that Ms. CLH and her client misunderstood that the case involved videos when it did not. Finding that the issue regarding authentication of Ms. CLH's statement was

resolved, and that Ms. CLH was authorized to present KF's statement as KF's representative, the military judge overruled the Defense's objections, and accepted KF's unsworn video statement (Court Exhibit 2), as was the preference of the victim; he did not accept KF's written statement (Court Exhibit 1).[5]

The following are portions from Court Exhibit 2, KF's eight-minute video statement to the court. KF stated:

> I still have nightmares that come from knowing the pictures of me are spread around on the internet by people with perverted interests in my pain. I have panic attacks and flashbacks, I can't sleep a lot of nights, no matter how early I go to bed . . . sleep doesn't come easy for me . . . something about the nighttime puts my mind on alert. . . . I have a constant fear for my children's safety, as pedophiles have continued to stalk me over social media and have hacked into my Facebook and Instagram accounts to steal pictures of what I look like now. . . . I fear what would happen if they did found [sic] out where we lived or got a hold of pictures or information about my children considering the efforts that some have gone to as they have continued to stalk me online. I take many safety measures but my anxiety remains. . . . I want you to know that dealing with the effects of the stress of random men looking at pictures of my sex abuse as a child is like a full-time job and it wears me down and colors every aspect of my life.

## II. DISCUSSION

### A. Victim's Impact Statement

#### 1. Law

A military judge's interpretation of R.C.M. 1001A is a question of law we review de novo. *See United States v. Barker*, 77 M.J. 377, 382 (C.A.A.F. 2018) (citations omitted). However, we review a military judge's decision to accept a victim impact statement offered pursuant to R.C.M. 1001A for an abuse of discretion. *See id.* at 383 (citing *United States v. Humpherys*, 57 M.J. 83, 90 (C.A.A.F. 2002) (reviewing a military judge's application of R.C.M. 1001A (2016 *MCM*) for an abuse of discretion)). "The 'judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect.'"

---

[5] Although he overruled the Defense's objection, the military judge did not play Court Exhibit 2 in open court; he watched the video during deliberations. The military judge did note after he announced the sentence that he watched the video in chambers, and that it was eight minutes and ten seconds long.

*Humpherys*, 57 M.J. at 90 (quoting *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995)).

Issues of statutory interpretation are reviewed de novo. *United States v. Jacobsen*, 77 M.J. 81, 84 (C.A.A.F. 2017) (citing *United States v. Vargas*, 74 M.J. 1, 5 (C.A.A.F. 2014)). Courts first look to the text of the statute. *Id*. (citing *United States v. Tucker*, 76 M.J. 257, 258 (C.A.A.F. 2017); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (internal quotation marks and citation omitted))). "When statutory language is unambiguous, the statute's plain language will control." *United States v. Jacobson,* 77 M.J. 81, 84 (C.A.A.F. 2017) (citing *United States v. Schell*, 72 M.J. 339, 343 (C.A.A.F. 2013)).

R.C.M. 1001A(b)(1) defines a "crime victim" as "an individual who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense of which the accused was found guilty." Child pornography is a continuing crime and a child depicted in the images is victimized each time the images are downloaded and viewed. *Paroline v. United States*, 572 U.S. 434, 439 (2014) (citation omitted).

A victim has a right to be reasonably heard in a sentencing hearing. Article 6b(a)(4)(B), UCMJ, 10 U.S.C. § 806b(a)(4)(B).

> At the beginning of the presentencing proceeding, the military judge shall announce that any crime victim who is present at the presentencing proceeding has the right to be reasonably heard, including the right to make a sworn statement, unsworn statement, or both. Prior to the conclusion of the presentencing proceeding, the military judge shall ensure that any such crime victim was afforded the opportunity to be reasonably heard.

R.C.M. 1001A(a). "[T]he right to be reasonably heard requires that the victims be contacted, given the choice to participate in a particular case, and, if they choose to make a statement, offer the statement themselves, through counsel, or through a 'victim's designee' where appropriate." *United States v. Hamilton*, 78 M.J. 335, 340–41 (C.A.A.F. 2019) (citations omitted). A victim may make a sworn or unsworn statement during sentencing in a non-capital case. R.C.M. 1001A(b)(4). An unsworn statement may be oral, written, or both. R.C.M. 1001A(e). Statements offered under R.C.M. 1001A(b) may include victim impact or matters in mitigation. "[V]ictim impact includes any financial, social, psychological, or medical impact on the crime victim directly relating to or arising from the offense of which the accused has been found guilty." R.C.M. 1001A(b)(2).

However, "the rights vindicated by R.C.M. 1001A [(2016 *MCM*)] are personal to the victim in each individual case. Therefore, the introduction of statements under this rule is prohibited without, at a minimum, either the presence or request of the victim, R.C.M. 1001A(a), the special victim's counsel or the victim's representative, R.C.M. 1001A(d)–(e)." *Barker*, 77 M.J. at 382. The military judge may permit the victim's counsel to deliver all or part of the victim's unsworn statement. R.C.M. 1001A(e)(2); *see also LRM v. Kastenberg*, 72 M.J. 364, 370 (C.A.A.F. 2013) ("A reasonable opportunity to be heard at a hearing includes . . . that a victim . . . who is represented by counsel be heard through counsel.") "During the presentencing proceedings, there shall be much greater latitude than on the merits to receive information by means other than testimony presented through the personal appearance of witnesses." R.C.M. 1001(f)(1).

Victim impact statements offered under R.C.M. 1001A are not "evidence," and thus "the balancing test in Mil. R. Evid. 403 is inapplicable to assessing the reasonable constraints that may be placed upon such statements." *United States v. Hamilton*, 77 M.J. 579, 586 (A.F. Ct. Crim. App. 2017) (en banc), *aff'd*, 78 M.J. 335 (C.A.A.F. 2019). As this court explained in *Hamilton*,

> Mil. R. Evid. 403 addresses "legal relevance" and provides that "evidence" may be excluded notwithstanding its logical relevance. In the decision to allow a victim to exercise their right to be heard on sentencing, a military judge is neither making a relevance determination nor ruling on the admissibility of otherwise relevant evidence. Instead, the military judge assesses the content of a victim's unsworn statement not for relevance, but for scope . . . .

*Id.*

In *Hamilton*, this court acknowledged the military judge has an "obligation to ensure the content of a victim's unsworn statement comports with the defined parameters of victim impact or mitigation as defined by the statute and R.C.M. 1001A."[6] *Id.* at 585–86 (citing R.C.M. 1001A, Discussion ("A victim's unsworn statement should not exceed what is permitted under R.C.M.

---

[6] Our holding was limited to the determination that victim impact statements, like an accused's unsworn statement, are not evidence: "Reading the plain language of the rules, we hold that unsworn victim impact statements offered pursuant to R.C.M. 1001A are not evidence." *United States v. Hamilton*, 77 M.J. 579, 583 (A.F. Ct. Crim. App. 2017) (en banc), *aff'd*, 78 M.J. 335 (C.A.A.F. 2019) (citing *United States v. Provost*, 32 M.J. 98, 99 (C.M.A. 1991) (if an accused elects to make an unsworn statement, he is not offering evidence)).

1001A(c) . . . . Upon objection or *sua sponte*, a military judge may stop or interrupt a victim's unsworn statement that includes matters outside the scope of R.C.M. 1001A.")).

The United States Court of Appeals for the Armed Forces (CAAF) affirmed this court's decision in *Hamilton* on grounds that the appellant suffered no prejudice by "[t]he victim impact statements . . . [that] d[id] not comply with the requirements of R.C.M. 1001A (2016), and, thus, were improperly admitted." *Hamilton*, 78 M.J. at 342. Consequently, the CAAF did not reach the question whether R.C.M. 1001A (2016 *MCM*) statements are subject to the Military Rules of Evidence, but acknowledged "[t]he plain language of R.C.M. 1001A (2016) clearly contemplates that at least some of the Military Rules of Evidence are inapplicable to victim impact statements." *Id*. The CAAF observed,

> [I]n those cases where a military judge complies with the detailed parameters set forth in R.C.M. 1001A (2016) and exercises sound discretion in determining whether the "right to be reasonably heard" is exceeded, resolution of [the issue whether R.C.M. 1001A statements are subject to the Military Rules of Evidence] is unlikely to be dispositive.

*Id*.

When there is error regarding the presentation of victim statements under R.C.M. 1001A, the test for prejudice "is whether the error substantially influenced the adjudged sentence." *Barker*, 77 M.J. at 384 (citation omitted). When determining whether an error had a substantial influence on a sentence, this court considers the following four factors: "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *United States v. Bowen*, 76 M.J. 83, 89 (C.A.A.F. 2017). "An error is more likely to be prejudicial if the fact was not already obvious from the other evidence presented at trial and would have provided new ammunition against an appellant." *United States v. Machen*, No. ACM 39295, 2018 CCA LEXIS 419, *12 (A.F. Ct. Crim. App. 29 Aug. 2018) (unpub. op.) (citing *United States v. Harrow*, 65 M.J. 190, 200 (C.A.A.F. 2007)).

### 2. Analysis

Appellant challenges the authenticity of Ms. CLH's written statement, her telephonic testimony regarding KF's (video) victim impact statement, and the overall admissibility of KF's statement. Regarding the authenticity of Ms. CLH's written statement, we find that Mil. R. Evid. 901 is inapplicable. Mil. R. Evid. 901 states that "[t]o satisfy the requirement of authenticating or identifying an *item of evidence*, the proponent must produce evidence sufficient to

support a finding that the item is what the proponent claims it is." (Emphasis added). Ms. CLH's written statement was not being offered into evidence. Nevertheless, as the CAAF indicated in *Barker*, military judges are expected to exercise sound discretion when it comes to a victim being reasonably heard, and in this case, we find the military judge exercised sound discretion in ensuring that Ms. CLH was KF's representative and that she accurately disclosed her client's views of the case. *See Barker*, 77 M.J. at 382–83. Even assuming *arguendo* that Mil. R. Evid. 901 applies, Ms. CLH's letter was authenticated through her testimony. *See* Mil. R. Evid. 901(b)(1). "Authentication simply requires establishing that the evidence is what the proponent claims it to be." *United States v. Lubich*, 72 M.J. 170, 173 (C.A.A.F. 2013) (citation omitted).

We now turn to Appellant's argument that the plain language of the law *unambiguously* requires a victim (or representative) to be physically present when presenting matters at sentencing proceedings. The language "*shall be called* by the court-martial" is not a mandate for presence at the court-martial. It means that a victim is not a prosecution or a defense witness (although the victim could be called as a witness); a victim is called by the court-martial. Additionally, Appellant appears to conflate the duty of the military judge under R.C.M. 1001(a)(3)(A) to *notify victims who are present* of their right to be heard, with the *right of any victim* to be reasonably heard under R.C.M. 1001A(a).

Thus, we disagree with Appellant's proposition that a victim (or representative) who is not *physically* present at the sentencing hearing forfeits his or her right to make a statement. R.C.M. 1001A conveys a personal right to the victim and does not expressly mandate physical presence. R.C.M. 1001A(a) merely states that a victim has the right to be "reasonably heard." In cases involving child pornography, a recognized continuing offense, we reject the argument that Congress, in providing rights for victims, also meant to add to their emotional, psychological, and potentially financial burden by requiring their physical presence in every case, where re-victimization has no limitation geographically or temporally, and a victim's right to make a statement would be hidden behind an impractical barrier of constantly being at the beck and call of prosecutors, rendering inconsequential the statutes and rules that are specifically designed to give them a voice.

Appellant argues "[t]he requirement that a victim (or her representative) be present is made even more necessary to ensure that a victim is actually aware of an accused's offenses," and that the victim's (or representative's) opinion could change by knowing the evidence in a case or "by hearing more about an accused's background." Again, we disagree. While it may be true that child pornography victims, such as KF, could change their opinion about their victimization based on the particular accused, it is unlikely. Further, we see no

confrontation issue; KF was making an unsworn statement and Appellant had no right to cross-examine her. R.C.M. 1001A(e). Additionally, this court has no expectation that KF would prepare a separate statement for every case where she was re-victimized by a stranger possessing or watching an image or video of her sexual abuse. As we stated in *United States v. Barker*, "[i]n continuing crime cases, such as possession and viewing of child pornography, there is no requirement that a victim prepare a separate statement for each individual case." 76 M.J. 748, 754 (A.F. Ct. Crim. App. 2017), *aff'd on other grounds by Barker*, 77 M.J. at 378; *overruled on other grounds by Hamilton*, 77 M.J. at 586. We hold that that the plain language of R.C.M. 1001A(e) does not require the physical presence of a child pornography victim (or their representative) to present or offer a victim impact statement to the court, and that telephonic or other reliable means is sufficient to meet the intent of R.C.M. 1001A(e).[7]

Lastly, we look at trial defense counsel's objection to considering KF's statement. As stated in *Hamilton*, "the military judge assesses the content of a victim's unsworn statement not for relevance, but for scope." 77 M.J. at 586. The facts surrounding Appellant's possession of child pornography were established through his providence inquiry and the stipulation of fact and its attachments. As noted, child pornography is a continuing offense. KF's video statement, made without showing her face, describes the lifelong social, emotional, and psychological toll her constant re-victimization has on her well-being. Many of the themes and harms contained in her statement are well known to the law and thus are presumed to have been known by the military judge. *See*

---

[7] *See United States v. Cink*, No. ACM 39594, 2020 CCA LEXIS 208 (AF. Crim. Ct. App. 12 Jun. 2020) (unpub. op.). In *Cink*, this court declined to opine on the necessity of "actual appearance":

> To be clear, we need not and do not decide here that actual appearance by a victim at the court-martial, either in person, by live remote means, or through counsel or a designated representative, is necessarily required in order to be heard pursuant to R.C.M. 1001A. *See Barker*, 77 M.J. at 382 ("[T]he introduction of statements under [R.C.M. 1001A] is prohibited without, at a minimum, either the presence *or request* of the victim, . . . the special victim's counsel, . . . or the victim's representative . . . ." (emphasis added)). For purposes of the instant case, it is sufficient to rely on our superior court's holdings that the victim, victim's counsel, or the victim's representative must offer the statement. Representations by a non-designated parent or by trial counsel are insufficient.

*Id.* at *11.

*Barker*, 77 M.J. at 384. The military judge advised the parties he would consider KF's video statement, but not her written statement (Court Exhibit 1). The military judge said he would give KF's statement the weight it deserved.

Although the military judge did not provide comment on KF's statement,[8] "[m]ilitary judges are presumed to know the law and to follow it absent clear evidence to the contrary. . . . As part of this presumption we further presume that the military judge is able to distinguish between proper and improper sentencing arguments." *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007) (citation omitted). This presumption holds regardless of whether the military judge notes the improper portions or states what portions he will consider. *Id.* Reviewing the record, there is no evidence to rebut this presumption and we are confident the military judge sentenced Appellant based on the appropriate victim-impact matters and evidence, and as such, did not abuse his discretion.

## B. Post-Trial Docketing

Appellant argues he is entitled to relief because his case was not docketed with this court within 30 days of action by the convening authority. In *United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521 (A.F. Ct. Crim. App. 16 Dec. 2019) (per curiam) (unpub. op.), this court addressed issues regarding entries of judgment in place of convening authority action[9] and how future post-trial processing will be analyzed under *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006):

> In *Moreno*, the CAAF identified thresholds for facially unreasonable delay for particular segments of the post-trial and appellate process. *Id.* at 141–43. Specifically, the CAAF established a presumption of facially unreasonable delay where the convening authority did not take action within 120 days of the completion of trial, where the record was not docketed with the Court of Criminal Appeals within 30 days of the convening authority's action,

---

[8] This court would recommend that military judges note on the record which portions of victim's statements were considered in the sentence.

[9] *See United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521, at *3–4 (A.F. Ct. Crim. App. 16 Dec. 2019) (per curiam) (unpub. op.):

> The entry of judgment takes the place of action by the convening authority under the former procedures in the sense that it "terminates the trial proceedings and initiates the appellate process." R.C.M. 1111(a)(2). After the military judge enters the judgment, the court reporter prepares and certifies the record of trial and attaches additional matters to the record for appellate review. R.C.M. 1112(c), (f).

or where the Court of Criminal Appeals did not render a decision within 18 months of docketing.

*Moody-Neukom,* unpub. op. at \*4.

However, as we recently noted in *United States v. Livak,*

Depending on the length and complexity of the record involved, we can envision cases in which the court reporter is still transcribing the proceedings after the convening authority's decision. As such, the prior 30-day period from action to docketing, which primarily involved transmitting an already-completed [record of trial] to the Court of Criminal Appeals, now overlays substantive actions such as completing the preparation of the record.

___ M.J. ___ , No. ACM S32617, 2020 CCA LEXIS 315, at \*6 (A.F. Ct. Crim. App. 14 Sep. 2020). This court held that:

[T]he specific requirement in *Moreno* which called for docketing to occur within 30 days of action no longer helps us determine an unreasonable delay under the new procedural rules. However, we can apply the aggregate standard threshold the majority established in *Moreno*: 150 days from the day Appellant was sentenced to docketing with this court. *See Moreno*, 63 M.J. at 142. This 150-day threshold appropriately protects an appellant's due process right to timely post-trial and appellate review and is consistent with our superior court's holding in *Moreno.*

*Id.* at \*6–7.

Applying *Livak* to the current case, Appellant's trial concluded on 29 March 2019; the Defense submitted clemency matters on 5 April 2019; the convening authority took action on the sentence on 9 April 2019; the military judge signed the entry of judgment on 22 April 2019; the court reporter certified the record of trial and a verbatim written transcript of the proceedings on 17 May 2019; and the record was docketed with this court on 18 June 2019. From the conclusion of trial to the docketing of Appellant's case with this court, 81 days passed. While it appears some of this delay could have been avoided, the delay is well below the 150-day threshold discussed above, and we find no facially unreasonable delay occurred and no violation of the Appellant's due process rights.

Assuming *arguendo* that there was a facially unreasonable delay, we have assessed whether there was a due process violation by considering the four factors the CAAF identified in *Moreno*: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of his right to a timely review

and appeal; and (4) prejudice [to the appellant]." *Moreno*, 63 M.J. at 135 (citations omitted). We have also considered that where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). We discern no prejudice, and we find no violation of Appellant's due process rights.

In the absence of a due process violation, this court considers whether relief for excessive post-trial delay is warranted consistent with this court's authority under Article 66(d), UCMJ, 10 U.S.C. § 866(d). *See United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd,* 75 M.J. 264 (C.A.A.F. 2016); *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002). Having considered the entire record and the particular facts and circumstances of this case, we find Appellant is not entitled to any relief on this issue.

### III. CONCLUSION

The findings and sentence entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court